Stasia V. Hayman v. Commissioner.
Hayman v. Commissioner
Docket No. 6365-66.
United States Tax Court
T.C. Memo 1968-103; 1968 Tax Ct. Memo LEXIS 194; 27 T.C.M. (CCH) 515; T.C.M. (RIA) 68103; May 29, 1968. Filed Stasia V. Hayman, pro se, 2032 Belmont Rd., N.W., Washington, D.C.Robert E. Garfield, for the respondent. KERN Memorandum Opinion KERN, Judge: Respondent determined a deficiency in petitioner's income tax liability for 1961 in the amount of $171.63. This deficiency resulted from respondent's determination that petitioner was not entitled to deductions of $810.96 in computing her net operating loss for 1964 to be in the sum of $1,312.93 and accordingly that the "net operating loss carryback allowable" in the taxable year 1961 should be reduced from $1,312.93 to $501.97. The statement attached to respondent's notice of deficiency contained the following sentence: The issue raised in your protest requesting that the net operating loss deduction be increased by the personal exemption of $600.00 has been given careful consideration and it has been determined that the deduction is not allowable pursuant to section 172(d)(3) of the Internal Revenue Code *197 . The petition alleges error on the part of respondent as follows: A. The disallowance by the respondent of the personal exemption of $600 (Sec. 172(d)(3)) on the 1964 return in computing net operating loss. 516 B. The disallowance by the respondent of the nonbusiness deductions for 1964 in computing net operating loss (Sec. 172 (d)(4)). All of the facts herein have been stipulated by the parties. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. Petitioner resides in Washington, D.C., and filed her income tax returns for the years involved herein with the district director of internal revenue at Baltimore, Maryland. In her return for 1964, petitioner stated her occupation as "Legal secretary" and reported the receipt of "Wages, salaries, tips, etc." in the amount of $2,819. In the same return she reported the receipt of rental income for 10 months of that year at a loss figure of $85.54 resulting from the receipt of gross rentals from a house in Illinois in the sum of $1,045 and the deduction therefrom of $461.19 as repairs and $669.35 as "Other expenses." This property was reported in this *198 return as having been acquired by petitioner in 1954 and as having been sold by her on November 3, 1964, at a loss of $3,235.43. In addition to petitioner's net loss from rentals of $85.54 and loss on the sale of the rental property of $3,235.43, petitioner claimed itemized nonbusiness deductions of $810.96. As a result, petitioner's tax return showed a minus figure for taxable income of $1,312.93 ($2,819.00 less the sum of $3,235.43, $85.54 and $810.96). On April 7, 1965, the district director in Baltimore, Maryland, received from petitioner a Form 1045, Application for Tentative Carryback Adjustment, showing a decrease in 1961 tax of $285.43 as a result of the carryback of a claimed $1,312.93 net operating loss for 1964. The total amount claimed of $285.43 was refunded to petitioner on May 10, 1965. Subsequent to the refund, the district director's office examined the petitioner's 1964 return and determined that the petitioner erroneously computed her claimed net operating loss of $1,312.93 by reason of her failing to eliminate the nonbusiness itemized deductions of $810.96. This adjustment results in the proposed deficiency of $171.63. In a letter addressed to the district *199 director of internal revenue in Baltimore, Maryland, dated January 13, 1966, petitioner claimed that the 1964 net operating loss carryback to 1961 should be increased by her $600 personal exemption which she failed to include in her original computation. Copies of petitioner's 1961 return, 1964 return, Application for Tentative Carryback Adjustment (Form 1045) and letter claiming an increase in the 1964 net operating loss carryback to 1961 were introduced into the record as exhibits attached to the stipulation. In her return for 1961 petitioner stated her occupation as "Teacher" and reported the receipt of "Wages, salaries, tips, etc." as follows: Prince Georges County Board of Education, Upper Marlboro, Md.
$3,080.00
Kelly Girl Service, Inc., Washing- ton, D.C.
1,412.06
Government of the District of Co- lumbia, Washington, D.C.
137.60 In the same return she reported rental income at a loss figure of $377.67 resulting from the receipt of gross rentals from a house in Hinsdale, Illinois, in the sum of $1,125 and the deduction therefrom of $580.16 on account of depreciation and $922.51 on account of "Other expenses." Opinion The question presented for our *200 decision by the pleadings in this case concerns the correct amount of the operating loss which petitioner is entitled to carry back from 1964 to 1961. Specifically, should the amount of this net operating loss carryback be $1,312.93 as originally computed and claimed by petitioner on April 7, 1965, or $1,912.93 representing the amount originally claimed increased by petitioner's $600 personal exemption which she failed to include in her original computation, or $501.97 as determined by respondent because of his elimination of nonbusiness deductions from the deductions used by petitioner in her computation of the net operating loss carryback. A net operating loss deductible under section 172(a), I.R.C. 1954, which can be carried back from 1964 to 1961 pursuant to section 172(b)(1)(A)(i) is defined by section 172(c) to be "the excess of the deductions allowed by this chapter over the gross income" with the proviso that "such excess shall be computed with the modifications specified in subsection (d)." Subsection (d) (3) provides as follows: (3) * * * No deduction *201 shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed. 517 Subsection (d)(4) provides in pertinent part as follows: (4) * * * In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence - (A) any gain or loss from the sale or other disposition of - (i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or (ii) real property used in the trade or business, shall be treated as attributable to the trade or business; * * *. As we have said, one of the allegations of error made in the petition is that respondent erred in the "disallowance * * * of the nonbusiness deductions for 1964 in computing net operating loss (Sec. 172(d)(4))." With regard to this allegation of error petitioner makes two arguments. The first is to the effect that respondent has incorrectly interpreted section *202 172(d)(4) in that he has followed the interpretation of section 172(d)(4) which was made by the majority of this court in Anders I. Lagreide [Dec. 20,721], 23 T.C. 508, instead of the interpretation made by the dissenting opinion published in that case under which latter interpretation nonbusiness deductions could be made from a taxpayer's salary income in computing a net operating loss deduction so long as the salary was "from a business not connected with that in which the operating loss occurred," Lagreide, supra, at 514. In connection with this argument petitioner cites Joe B. Luton, 18 T.C. 1153, and James H. Cunningham, 20 T.C. 65, both of which were cited and relied upon by Judge Murdock in his dissenting opinion in Lagreide. The majority opinion in Lagreide distinguished Cunningham and overruled Luton. In Godfrey M. Weinstein, 29 T.C. 142, we specifically re-affirmed our holding in Lagreide and held that nonbusiness deductions could not be deducted from salaries in computing net operating losses. We are not disposed *203 to reach a different result in this case which would entail the overruling of both the Lagreide and Weinstein cases. Petitioner also argues in support of her proposition that respondent erred in disallowing nonbusiness deductions in computing her net operating loss for 1964, that subsection 172(d)(4) is unconstitutional and therefore is inapplicable to the facts of this case. This argument appears to be based on petitioner's contention that the application of subsection 172(d)(4) to the computation of a net operating loss would result in unreasonable discrimination against a taxpayer having a net operating loss as compared with one having a capital loss and against poorer taxpayers who work for salaries and wages and have no income from investments as compared with taxpayers who have nonbusiness income from investments in addition to their business income. Petitioner also contends that subsection 172(d)(3) is unconstitutional for much the same reasons. It is axiomatic that deductions are matters of legislative grace. Congress has seen fit to permit taxpayers to deduct in certain taxable *204 years net operating losses sustained in certain other taxable years. At the same time Congress has seen fit to prescribe that in the computation of an individual's net operating loss no deduction from gross income should be made on account of a personal exemption and that deductions not attributable to a taxpayer's trade or business should be allowed only to the extent of gross income not derived from trade or business. In General Securities Corporation, 23 B.T.A. 130 at 133, we made the following statement: We know of no constitutional provision which requires Congress to permit actual losses sustained in one year to be deducted in computing net income of any other year. Neither do we know of any provision which prohibits Congress from allowing such deduction. Congress, therefore, had the right, in exercising its discretion as to whether any loss sustained in one year should be allowed as a deduction in computing gross income of any other year, to prescribe the method of computing such loss. See also Otto Keusch, 23 B.T.A. 216; Brushaber v. Union Pac. R.R. *205 , 240 U.S.I. We are unable to see anything in the statutory scheme relating to the computation of a net operating loss so capricious in classification, so arbitrary or producing such gross and patent inequality as to justify a conclusion on our part that subsections 172 (d)(3) and 172(d)(4) are unconstitutional as applied to the facts of this case. See 518 Brushaber v. Union Pac. R.R., supra, at 24 and 25. In our opinion petitioner's constitutional argument, though vigorously asserted and at times eloquently expressed rests "upon the mistaken theory that * * * where a tax levied is believed by one who resists its enforcement to be wanting in wisdom and to operate injustice, from that fact in the nature of things there arises a want of due process of law and a resulting authority in the judiciary to exceed its powers and correct what is assumed to be mistaken or unwise exertions by the legislative authority of its lawful powers, * * *." Brushaber v. Union Pac. R.R., supra, at 26. Petitioner devotes a considerable part of her argument on brief to her contention that section 151(b), I.R.C. 1954, which grants a personal exemption in the amount of $600 is *206 unconstitutional. In connection with this argument petitioner points out that "Since 1948, the personal exemption deduction for any single taxpayer or dependent has been $600; this figure applies to a taxpayer whether his income is $900 or $9 million; it applies to a working adult who maintains a household and to a one-day old infant who is not yet required to pay his way in the world; it applies in 1967 as well as in 1948, despite a rise in the cost of living which according to the Commodity Price Index (Attachment #2) has risen at least 37% since 1948, and probably closer to 50%, in certain areas such as medical expense." In view of the fact that we have concluded as stated above that the prohibition contained in subsection 172(d)(3) against the deduction of any personal exemption in the computation of a net operating loss is valid and constitutional, the question of the proper constitutional amount of such an exemption becomes moot on the facts of this case. Regardless of whether it should be $600 or $6,000 it is not deductible in computing petitioner's net operating loss. In her brief petitioner attempts to raise an alternative contention to the effect that the rental property *207 sold by her in 1964 was not property used by her in a trade or business within the meaning of any provision of section 172 and therefore a loss resulting from its sale in 1964 would not give rise to a net operating loss which could be carried back to 1961 but rather to a capital loss which could be carried over to years subsequent to 1964. Petitioner now argues that "* * * after diligently studying the case law and the Internal Revenue Code on the subject, she is convinced that both these sources support a finding that the transaction herein [i.e., the sale of petitioner's rental property at a loss] is entitled to capital loss treatment with unlimited carryover under sections 1221, 1211 and 1212 of the Code," that "such a finding would * * * render mute [sic] the issues of constitutionality * * *," and that petitioner has not suffered a loss "attributable to a trade or business, but rather to the disposition of a capital asset * * *." The difficulty with this argument is that it is not pertinent to the issues presented by the pleadings which relate to the proper computation of a net operating loss claimed by petitioner for 1964 which she can carry back to 1961. Respondent has *208 allowed the net operating loss carryback claimed with a consequent reduction in petitioner's taxes for 1961 but not in amounts as computed by petitioner, and accordingly a deficiency has been determined for 1961 which is here at issue. Petitioner's argument to the effect that the loss resulting from the sale of her rental property in 1964 gave rise to a capital loss which could be carried forward to succeeding years instead of giving rise to a net operating loss which could be carried back to 1961 is not relevant to any issue presented by the pleadings and cannot be considered by us. See Camp Wolters Enterprises, Inc., 22 T.C. 737, 755, aff'd 230 F. 2d 555, cert. den. 352 U.S. 826. See, also, James F. Curtis T.C. 648, 651. However, we wish to point out that our refusal to consider this argument of petitioner should not be construed as a finding or conclusion on our part that the loss on the sale of petitioner's real property was not a capital loss. We have merely assumed in our consideration of this case what was assumed by the parties in their actions and pleadings prior to and at the time of trial, i.e., that the loss resulting from sale *209 of petitioner's rental property in 1964 can be deducted from petitioner's income from "Salary, wages, tips, etc." in computing the net operating loss carryback available to her in 1961. We have no inclination to preclude petitioner from litigating her right to a capital loss deduction for 1964 and subsequent years to the extent not barred by statutory limitation. Decision will be entered for the respondent. 519