BERNARD A. YERKIE AND MARGARET J. YERKIE, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7913–74, 5710–75.   Filed December 6, 1976.

*John J. Raymond,* for the petitioners.
*Peter M. Ritteman,* for the respondent.

#### OPINION

IRWIN, *Judge:* In these consolidated cases respondent determined deficiencies in petitioners' individual income taxes for 1966 through 1970 of $1,620.72, $3,213.44, $5,086.80, $5,522.74, and $5,183.82, respectively, with additions to tax based on fraud under section 6653(b),[1] applicable solely to husband petitioner, of $810.36, $1,606.72, $2,543.40, $2,761.37, and $2,591.91, for the same respective years.

The only issue remaining for resolution is whether the funds embezzled by husband petitioner and repaid in years subsequent to embezzlement constitute income subject to the adjustment procedures of either section 1341 or 172.

All of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. These consolidated cases are submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure.

In the event the Court determines that neither section 1341 nor 172 is applicable to these proceedings, petitioners concede that respondent's determinations of deficiencies are correct and are not barred by the applicable statute of limitations of section 6501 and that the fraud penalties apply.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved, unless otherwise indicated.

If the Court determines that either section 1341 or 172 is applicable, the parties agree that petitioners' total deductions under section 1341 are limited to $78,603.23.

Petitioners Bernard A. Yerkie and Margaret J. Yerkie were husband and wife during the taxable years 1965 through 1975. From 1965 through 1972 petitioners resided in Muskegon, Mich. At the time they filed their petitions herein in 1974 and 1975, they resided in Uniontown, Ohio. Their joint income tax returns for calendar years 1966 through 1970 were prepared on a cash basis and filed with the District Director of Internal Revenue, Detroit, Mich., and the Central Service Center, Covington, Ky.

In 1954 Bernard A. Yerkie (hereafter petitioner) was employed by A. & C. Carriers, Inc., and Laketon Equipment Co. (hereafter the companies), a related concern of Muskegon, Mich. He eventually became secretary-treasurer and office manager of the companies and continued his employment until sometime during 1971.

The majority stockholder in the companies told petitioner that petitioner would eventually take over his interest in these businesses. In 1966 this promise was withdrawn and petitioner wrongfully began to convert some of his employers' funds to his own use. He continued this unlawful practice during the years 1966 through 1970, inclusive. None of the funds embezzled from his employers was reported as gross income on petitioner's income tax returns for these 5 years. Margaret J. Yerkie was not involved in nor aware of the diversions made by her husband.

In 1971 petitioner was accused by his employers of embezzling funds during the calendar years 1966 through 1970 in the amount of $110,000. He repaid the amounts alleged to have been embezzled as follows:

| | |
|---|---|
| 1971 | $20,900 |
| 1972 | 89,100 |
| Total | 110,000 |

On February 4, 1972, a release and indemnity agreement was executed by his former employers.

Petitioner did not maintain records of the amounts he embezzled during 1966 through 1970. Petitioner converted to his own use funds of his employers in 1966 in the amount of

$7,500, as reflected in the statutory notice issued in 1974 for the calendar year 1966. The funds converted by petitioner during 1967, 1968, 1969, and 1970 were in the amounts of $12,802.97, $17,545.54, $18,165.12, and $21,262.29 for 1967 through 1970, respectively. These sums were reconstructed by respondent using the bank deposit method and are reflected in the statutory notice issued in 1975 for those years.

It is a principle of long standing in the tax law that all payments a taxpayer receives under a claim of right are includable in gross income. Although the proceeds of an embezzlement are not obtained lawfully, they result in economic gains for the embezzler and, as such, are included in his gross income for the year in which the funds were misappropriated. *James v. United States,* 366 U.S. 213 (1961). This is in line with the definition in section 61 which includes in gross income "all income from whatever source derived." To hold otherwise would result in the incongruity of placing the person who recognizes gain by unlawful means in a better position than the honest worker whose income is taxed. Thus, the petitioner in this case was issued a notice of deficiency for his failure to include embezzled funds in gross income for the years in issue.

When amounts embezzled are repaid, a deduction for individuals is permitted by section 165(c)(2) as a loss incurred in a transaction entered into for profit, though not connected with a trade or business. See Rev. Rul. 65–254, 1965–2 C.B. 50. This is consistent with the opinion in *James,* which states:

When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as "gross income" in the year received. *United States v. Lewis, supra; Healy v. Commissioner, supra.* We do not believe that Congress intended to treat a law-breaking taxpayer differently. Just as the honest taxpayer may deduct any amount repaid in the year in which the repayment is made, the Government points out that, "If, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income." * * * [366 U.S. at 219–220.]

In conformance with the above, respondent permitted petitioner a deduction under section 165(c)(2) for repaid amounts of $20,900 in 1971 and $89,100 in 1972.

The principal argument of the parties centers around section 1341. Section 1341(a) provides rules for the computa-

tion of tax where a taxpayer is entitled to a deduction in excess of $3,000 as a result of restoring an amount included in gross income for a prior taxable year(s) because it appeared that the taxpayer had an unrestricted right to such amount. The accompanying regulations state that, for purposes of section 1341, "income included under a claim of right" means an item is included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item. Sec. 1.1341–1(a)(2), Income Tax Regs. Special rules and exceptions to the computation provisions of section 1341 are included in section 1341(b)(2).

Petitioner maintains that these deductions for his repayments in 1971 and 1972 give rise to the computation of tax rules applicable to repaid sums held under a claim of right as provided by section 1341. He further argues that the specific exceptions to the applicability of section 1341, as found in section 1341(b)(2), do not include embezzled funds; ergo, no *such exception has been made a part of this section by which one who embezzles funds would be denied its applicability.*

Respondent maintains that, while it is true that proceeds of an embezzlement are includable as gross income in the year of embezzlement, these proceeds are not received under a claim of right within terms set forth in section 1341, so the taxpayer is not entitled to utilize the tax computation of section 1341 for embezzled funds.

Respondent further claims that petitioner's failure to initially include the embezzled funds in gross income precludes him from section 1341 since that inclusion is a necessary element for the adjustment procedures of the section. It is noted that the statutory notice issued by respondent included petitioner's embezzled funds in each of the taxable years 1966 through 1970.

Petitioner contends that since gross income includes all payments received under a claim of right, and since the Supreme Court held that embezzled funds constitute gross income, *James v. United States, supra,* then the Court either expanded "claim of right" to include embezzled funds or chose not to distinguish between legal and illegal income. On this premise petitioner submits that he is not excluded from section 1341(a) for lack of right to income.

Petitioner's syllogism is faulty and he misconstrues the meaning of "unrestricted right" in section 1341. When the Supreme Court held that embezzled proceeds constitute gross income, it was aware of the distinction between legal and illegal income. The Court recognized that the embezzler does not have a "bona fide claim of right to the funds" but held that fact inconsequential to the inclusion of these proceeds in gross income and the resulting deduction for repayment, because the purpose underlying the opinion was to avoid taxing income rightfully received while exempting income from unlawful means. *James v. United States, supra* at 216. It does not follow that the distinction between legal and illegal income is inconsequential for determinations under other Code sections, and, in fact, we reject the inference that it is. The inclusion of embezzled funds as gross income and the concomitant right to a deduction upon repayment neither categorizes embezzled proceeds as income rightfully received nor bestows upon these funds the characteristics of income received under a claim of right. We hold *petitioner never had an unrestricted right to the sums embezzled within the terms of section 1341(a).*

We also reject petitioner's contention that, because the deduction for embezzled funds is not specifically excluded by section 1341(b)(2), it is necessarily included in section 1341(a). The failure of petitioner's circumstances to fall within the scope of specific exceptions does not guarantee him an automatic inclusion in that section's general rule. Petitioner must still meet the qualifications of section 1341(a) to be eligible for the tax computations of that section. In this case petitioner is precluded from utilizing the benefits of section 1341(a) for the simple reason he fails to meet the applicable qualifications therein.

In the alternative petitioner asserts that the repayment of embezzled funds constitutes trade or business expenses of a salaried employee which create a net operating loss in the years of repayment subject to the carryback provisions of section 172.

Respondent claims that the repaid embezzlement proceeds are subject to a deduction as individual nonbusiness losses under section 165(c)(2) and, as such, do not create a net

operating loss deduction under section 172. We agree with respondent.

The net operating loss for an individual is the excess of allowable business deductions over the sum of business gross income plus net nonbusiness income. (Net nonbusiness income equals nonbusiness gross income minus nonbusiness deductions itemized on Schedule A, Form 1040.) Sec. 172(c). When such deductions exceed gross income, this excess may be applied against the income of other years. Sec. 172(a). Subject to certain modifications section 172(b) provides a net operating loss deduction for the year(s) to which this excess is carried.

It is petitioner's contention that the repayment of embezzled funds creates a net operating loss under section 172(c) because they were allowable business deductions in excess of the sum discussed above.

Resolution of this issue turns on whether the deduction for repaid embezzlement funds is a business loss under 165(c)(1) or a nonbusiness loss under 165(c)(2).

Petitioner does not claim he was engaged in the business of embezzlement. Rather, he maintains that, as a full-time salaried employee engaged in the trade or business of his employer, he embezzled funds as a result of his activities in this capacity. He reasons that since his repayment of embezzled funds stems from this employment, then his deductible losses properly fall within section 165(c)(1), and, hence, are eligible for the net operating loss deductions of section 172 as excess business deductions.

This argument is spurious. It can hardly be said that embezzlement is an activity or function of employment or is a result which arises from one's rights and obligations as an employee. To the contrary, employers have every right to expect adherence to standards of integrity and honor from the people they hire. We reject the concept that embezzlement and the repayment of embezzled funds constitute an aspect of the trade or business of a salaried employee.

We hold, therefore, that a deduction for repayment of embezzlement proceeds is permitted within the limitations of section 165(c)(2) as a nonbusiness loss. *Blaine S. Fox*, 61 T.C. 704 (1974); *Norman v. Commissioner*, 407 F.2d 1337 (3d Cir. 1969), affg. per curiam a Memorandum Opinion of this Court,

cert. denied 395 U.S. 947 (1969). As a result petitioner has no excess business deductions over gross income to compute the net operating loss within section 172(c).[2]

In the recent case of *McKinney v. United States,* F.Supp. (W.D. Tex. 1976), it was held that the only tax benefit to which an embezzling taxpayer is entitled for the repayment of embezzled funds is a nonbusiness deduction under section 165(c)(2). There the taxpayer argued that embezzlement itself constitutes a trade or business or, in the alternative, that embezzled funds are subject to section 1341 as proceeds received under a claim of right. Although the first contention is not in issue here, the treatment of embezzled funds in that case falls squarely within the scope of the case at bar. The District Court noted:

The decision of the Supreme Court in *James* cannot properly be read to say that the Supreme Court concluded that embezzled funds are held under a claim of right. On the contrary, *James* does not in any way contradict or weaken the Court's statement in *Wilcox* [327 U.S. 404 (1946), holding that embezzled funds were not gross income] that embezzled funds are not held under a claim of right; it only says that this is immaterial in determining whether embezzled funds must be included in gross income. It is important to note that the Court does not say in *James* that whether embezzled funds are held under a claim of right or not is of no tax importance. The Court only said that the claim of right doctrine is of no importance in determining whether embezzled funds must be included in gross income. Thus, there is no Supreme Court case that either holds or implies that Plaintiff ought to be entitled to the benefits of §1341 because he held the embezzled funds under a claim of right, and in fact, a careful reading of *Wilcox* and *James* seems to imply just the opposite. * * *

In the only other case dealing with sections 1341 and 172, *Hankins v. United States,* an unreported case (N.D. Miss. 1975, 36 AFTR 2d 75–6008), affd. by court order (5th Cir. 1975), both the carryback provisions of section 172 and the tax computation benefits of section 1341 were denied to an embezzler who repaid funds he stole from his employer. The

---

[2] Our determination that the repayment of embezzled funds is not a business deduction means that it will enter into the nonbusiness deductions under 172(d)(4) applicable toward the computation of the net operating loss. As nonbusiness deductions, petitioner's repayment of embezzled funds in 1971 and 1972 only offsets any nonbusiness income for those years. Since petitioner's salary is considered business income, *Anders I. Lagreide,* 23 T.C. 508 (1954), the computation yields no amount in petitioner's case to be considered as a net operating loss available for carryover.

court discarded the argument that embezzlement of the employer's till could constitute a trade or business for tax purposes. The court also held that repayment of funds was not a business loss or expense. It further concluded that an embezzler does not rightfully receive his employer's funds for purposes of section 1341.

In conclusion, the provisions of sections 1341 and 172 are not available for petitioner's repayment of embezzled funds.

*Decisions will be entered for the respondent.*