RUSSELL L. MANNETTE, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5958–76.     Filed March 22, 1978.

*Marvin Margolis,* for the petitioner.
*Harmon B. Dow,* for the respondent.

OPINION

RAUM, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Year | Amount | Additions to tax, I.R.C. 1954 | | |
|------|--------|-----------|-----------|-----------|
| | | Sec. 6653(b) | Sec. 6651(a) | Sec. 6653(a) |
| 1969 | $11,644.61 | $5,822.31 | | |
| 1970 | 57,450.77 | 28,725.39 | | |
| 1971 | 66,202.49 | | $16,069.46 | $3,310.12 |

As a result of concessions by the parties, the only issue remaining for decision is whether petitioner, an embezzler, may reduce his income tax liability for years in which he embezzled

funds by making partial restitution of these funds in a taxable year subsequent to the years at issue. All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Russell L. Mannette, Jr., is an individual who resided in Skokie, Ill., at the time the petition in this case was filed. Petitioner filed his 1969 and 1970 income tax returns with the Internal Revenue Service Center at Kansas City, Mo. Petitioner did not file any Federal income tax returns for the years 1971 and 1972.

From 1959 through 1972 petitioner was employed by the Skokie Trust and Savings Bank, Skokie, Ill. While employed at Skokie Trust and Savings Bank, petitioner embezzled funds from the bank and certain customer accounts in amounts not less than the following:

| Year | Amount |
|------|--------|
| 1969 | $30,000.00 |
| 1970 | 113,518.85 |
| 1971 | 105,056.25 |
| Total | 248,575.10 |

Petitioner did not report any of the embezzlement proceeds as income in 1969, 1970, or 1971, but he has conceded that the amounts embezzled constitute taxable income to him in the years received.

During 1972, petitioner repaid to the Skokie Trust & Savings Bank the amount of $200,650.21 as restitution for the money embezzled in 1969, 1970, and 1971. No further repayment of embezzled funds has been made by petitioner.

In the period from 1968 through 1971, petitioner engaged in many transactions whereby he purchased and sold for his own account stocks, bonds, commodities, and other securities. Funds embezzled from the Skokie Trust & Savings Bank were used by petitioner to finance the purchases in the majority of these transactions. There is no evidence that petitioner received commissions or other compensation from his investment activities other than the returns normally incident to personal securities investments (dividends, bond interest, and gains from capital appreciation).

Petitioner seeks to reduce income tax deficiencies for 1969, 1970, and 1971—determined in part by the Commissioner to

reflect petitioner's conceded failure to report his embezzlement income—by virtue of his partial repayment of the same embezzlement income in 1972. In order to succeed, petitioner must demonstrate that section 172[1] permits him to carry back and deduct in prior years the part of his 1972 tax loss which arose from deduction of the repayment in 1972.[2] The Commissioner has disallowed petitioner's 1972 loss as a section 172 net operating loss carryback. We agree with the Commissioner and therefore sustain his determination.

Section 172(c)[3] defines net operating losses which qualify for a carryback deduction under section 172(b) to be the excess of allowable deductions over gross income, computed with modifications specified in section 172(d). Section 172(d)(4)[4] provides that net losses from an excess of nonbusiness deductions over nonbusiness gross income will not be included in an individual taxpayer's net operating loss.

Embezzlers generally have been prohibited from carrying back losses arising from repayments of embezzled funds. The courts have held that since embezzlement is not a "trade or business," repayments of embezzled funds are deductible only under section 165(c)(2), as losses incurred in a transaction for profit, rather than under section 165(c)(1), as trade or business losses.[5] Section 165(c)(2) deductions are, of course, not included

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.

[2] We assume for present purposes, as indicated by the Commissioner on brief, that petitioner incurred a net loss in 1972 (which may be computed under sec. 172 only by taking 1972 income into account), but the record fails to disclose that the amount of that net loss was equal to the amount of embezzled funds which petitioner paid back in 1972.

[3] Sec. 172(c):

(c) NET OPERATING LOSS DEFINED.—For purposes of this section, the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

[4] Sec. 172(d):

(d) MODIFICATIONS.—The modifications referred to in this section are as follows:

\* \* \* \* \* \* \*

(4) NONBUSINESS DEDUCTIONS OF TAXPAYERS OTHER THAN CORPORATIONS.—In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. \* \* \*

[5] Losses suffered by an individual are deductible under sec. 165, relevant portions of which are set forth below:

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

in net operating losses to the extent provided by section 172(d)(4). See *Yerkie v. Commissioner*, 67 T.C. 388, 393; *McKinney v. United States*, an unreported case (W.D. Tex., 38 AFTR 2d 76–6098, 76–2 USTC par. 9728); *Hankins v. United States*, 403 F. Supp. 257 (N.D. Miss.); Rev. Rul. 65–254, 1965–2 C.B. 50. See also *Fox v. Commissioner*, 61 T.C. 704, 712–714.

Petitioner attempts to distinguish these cases by his contention that although he was not in a "trade or business" of embezzlement, embezzlement was intended to be the source of working capital for a trade or business of conducting securities and commodities trades. This, he argues, requires classification of the 1972 repayment as a business loss, taken into account in full for net operating loss purposes, because it was "inextricably intertwined" with his alleged securities business. The argument is without merit.

The extent of petitioner's buying and selling of securities is set forth in detail in the stipulated materials, which we have taken into account. Although we do not find from these materials that those investment activities amounted to the carrying on of a securities business (cf. *Wilson v. United States*, 376 F.2d 280, 291–293 (Ct. Cl.); *Higgins v. Commissioner*, 312 U.S. 212), we need not pass upon this point. For even if such activities could be characterized as the conduct of a securities business, petitioner's position which seeks to treat his embezzlements as an integral part of such alleged business is fatally defective.

In *Yerkie v. Commissioner, supra,* we rejected a similar argument that embezzlement was a part of the taxpayer's trade or business of being a salaried employee. This Court stated (67 T.C. at 393):

> This argument is spurious. It can hardly be said that embezzlement is an activity or function of employment or is a result which arises from one's rights and obligations as an employee. To the contrary, employers have every right to

---

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

    (1) losses incurred in a trade or business;

    (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

    (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. \* \* \*

expect adherence to standards of integrity and honor from the people they hire. We reject the concept that embezzlement and the repayment of embezzled funds constitute an aspect of the trade or business of a salaried employee.

We think that embezzlement is no more a proper activity arising from the "rights and obligations" of a legitimate securities trader than it is a proper function of the trade or business of being a salaried employee. The contrary result is not only against common sense, but would allow embezzlers, at their discretion, to convert nonbusiness embezzlement losses into business losses by the simple expedient of investing the embezzled funds in a business. This would assure availability of net operating loss carrybacks to offset unreported embezzlement income in the event of future apprehension and compelled restitution. Such a result would reduce the financial risks of surreptitious embezzlement activities and would provide an easy avenue for subversion of the public policy concerns responsible for the rule denying trade or business status to embezzlers. See *McKinney v. United States, supra.*

Petitioner also argues that his 1972 repayment should be treated as a loss arising "from theft" deductible under section 165(c)(3)[6] because it was "connected with" a theft—petitioner's own embezzlement from Skokie Trust & Savings Bank.[7] This argument is frivolous. Theft loss deductions are available under section 165(c)(3) only to victims of theft. See sec. 1.165–8(f), Income Tax Regs. The money repaid by petitioner was obviously not stolen from him.

Petitioner's final argument is that his Fifth Amendment right of substantive due process is violated if a tax is imposed on the full amount of his embezzlement income without reduction or offset for money repaid by petitioner in a later year. We disagree.

A tax statute may be so arbitrary and capricious so as to cause it to violate the Fifth Amendment. See, e.g., *Heiner v. Donnan,* 285 U.S. 312. However, there is nothing constitutionally arbitrary about taxing income on an annual rather than on a transactional basis, without taking into account events in other

---

[6] Sec. 165(c)(3) is quoted in n. 5 *supra.*

[7] By statute, nonbusiness theft and other casualty losses deductible under sec. 165(c)(3) are deemed to be business losses eligible for inclusion in a taxpayer's net operating loss. Sec. 172(d)(4)(C); sec. 1.172–3(a)(3)(iii), Income Tax Regs.

years, even if taxable income in one period is exceeded by losses in another. Use of a fixed accounting period, rather than a system taking into account the "finally ascertained results of particular transactions," has long been recognized as a practical necessity of taxation. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 365. Nor is it arbitrary to allow deduction of nonbusiness losses only in the year incurred and not in earlier or later years. The constitutionality of section 172(d)(4), which is responsible for this result, has been upheld by this Court in *Hayman v. Commissioner*, 27 T.C.M. 515, 37 P-H Memo. T.C. par. 68, 103, affirmed in an unpublished opinion (D.C. Cir., 69–1 USTC par. 9350, 23 AFTR 2d 69–1027), certiorari denied 396 U.S. 843. Petitioner has made no arguments or adduced any distinguishing factors causing us to reach a different result in this case.

Petitioner has requested on brief that he be allowed to elect the benefits of income averaging, sections 1301–1305, for the years at issue. Rev. Rul. 66–306, 1966–2 C.B. 356. See sec. 1304(a); sec. 6511(a); sec. 1.1304–1, Income Tax Regs. Cf. *Hosking v. Commissioner*, 62 T.C. 635, 637–642, appeal dismissed (nolle pros.) (8th Cir.). In order to allow the parties to give due consideration to this request,

*Decision will be entered under Rule 155.*