DONALD P. FLYNN and PHYLLIS A. FLYNN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flynn v. Commissioner
Docket No. 10584-78.
United States Tax Court
T.C. Memo 1981-491; 1981 Tax Ct. Memo LEXIS 253; 42 T.C.M. (CCH) 1022; T.C.M. (RIA) 81491; September 9, 1981. *253 P, a bank officer, embezzled funds from his employer from 1961 through 1975 through the creation of fictitious loans. P used the embezzled funds for personal living expenses and to make payments on both bona fide loans of legitimate bank customers and prior fictitious loans created by P. Held, all the proceeds of fictitious loans received after 1968 are taxable income to P. Held further, the payments made on bona fide loans of legitimate bank customers and payments made on fictitious loans created by P prior to 1969 are not deductible by P as ordinary and necessary expenses incurred during the taxable year for the production of income. Held further, P's wife is jointly and severally liable for the deficiency in tax but not for the 50 percent penalty for fraud. Donald P. Flynn, pro se. William B. Lowrance and James R. Turton, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1969 through 1974 and additions to tax under section 6653(b) for 1969 through 1974 as follows: Additions to Tax
Year
Deficiency
Section 6653(b)
1969
$ 12.58
$ 4,213.29
1970
320.52
3,475.38
1971
47,567.60
29,768.34
1972
30,612.56
24,988.28
1973
45,816.60
28,720.80
1974
123,370.45
68,583.73
*254 Concessions having been made by the parties, the issues remaining for decision are (1) whether the proceeds of fictitious loans (i.e., embezzled funds) used to pay principal and interest on bona fide loans of legitimate bank customers are taxable income to the embezzler, (2) if so, whether those payments are deductible; and (3) whether the proceeds of fictitious loans (i.e., embezzled funds) used to pay prior fictitious loans (i.e., repayment of prior embezzled funds) are deductible by the embezzler. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are as follows. Petitioners, Donald P. Flynn and Phyllis A. Flynn, husband and wife, resided in Dallas, Texas, at the time they filed their petition herein. Their joint tax returns for the years 1969 through 1974 were timely filed with the Office of the Internal Revenue Service at Austin, Texas, and amended joint tax returns for such years were filed with the same office during July, 1975. During the years at issue, Donald P. Flynn (hereinafter Donald) was employed *255 by the Republic National Bank of Dallas, Texas (hereinafter bank), beginning as an assistant vice-president in 1956 with promotions to vice-president in 1960 and senior vice-president in 1966. Donald's employment with the bank was terminated February 18, 1975, after bank officials determined that Donald had created fictitious loan accounts and misapplied the proceeds of such loans to his own benefit and to payments of principal and interest on some of the loan accounts of the bank's customers. In 1961, three years after coming to work for the bank, Donald created a fictitious loan in the name of R. W. Slewmaker in the amount of $ 2,000 and converted this amount to his own use. He did this because he was in need of additional personal funds at the time. When this note became due, Donald either renewed the note or created another loan using the proceeds of the subsequent loan to pay the Slewmaker note. From 1961 to 1975 Donald created 30 fictitious loans amounting to more than $ 1,183,115. The proceeds of these loans were deposited either to Donald's personal checking account or to the J. P. Armstrong, Jr., account (hereinafter Armstrong account), a fictitious checking account created *256 by Donald solely for the purpose of depositing the proceeds of fictitious loans wrongfully obtained from the bank. Donald had sole signature authority to withdraw funds from the Armstrong account. All moneys embezzled by Donald were deposited to one of these two accounts under his control. Payments from these checking accounts were applied to the personal living expenses of Donald, to repayment of prior fictitious loans created by Donald, and to payments on bona fide loans made by Donald to actual customers of the bank. Donald made payments on bona fide loans because the borrowers had failed to make timely payments, and Donald wished to show a reduction in the loan balances in order to avoid criticism from bank management officials and to avoid an audit of his entire portfolio. He advised such customers that a private individual was willing to loan money to them for payment on their loans because such private individual was interested in Donald's career. No such private individual existed. Payments made by Donald on bona fide loans and on fictitious loans were not normal, usual, or customary in the banking business. The proceeds of pre-1969 fictitious loans were not included *257 in petitioners' income tax return as income in any year. Respondent's notice of deficiency includes the proceeds of all post-1968 fictitious loans in petitioners' income but does not include any proceeds of embezzlement prior to 1969. Petitioners stipulated that Donald is liable for the civil fraud penalty under section 6653(b) on the amounts of tax deficiencies determined by the Court for all years in issue. The first issue for our decision is whether the embezzled funds used to pay principal and interest on bona fide loans of legitimate bank customers are taxable income to petitioners. Petitioners contend that the proceeds of the fictitious loans deposited in the Armstrong account and used to pay the principal and interest on bona fide loans are not taxable income to the petitioners because Donald had no claim of right to the embezzled funds. Prior to James v. United States, 366 U.S. 213 (1961), revg. 273 F.2d 5 (7th Cir. 1959), there was support for such a position regarding embezzled funds. James, however, clearly establishes that "readily realizable economic value," and not a claim of right, is the prerequisite to taxability: * * * A gain "constitutes taxable income when *258 its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States, supra, at p. 137. * * * When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil v. Burnet, supra, at p. 424. In such case, the taxpayer has "actual command over the property taxed--the actual benefit for which the tax is paid," Corliss v. Bowers, supra. [James v. United States, supra at 219.] Petitioners further contend that Donald received no personal economic gain from these funds since the embezzled funds flowed directly from the bank through a bank checking account to the bona fide borrower-beneficiaries. Similar arguments have been made unsuccessfully in the past. The key factor in determining taxability is control. That the funds remained in the bank is not material. *259 Estate of Geiger v. Commissioner, 352 F.2d 221 (8th Cir. 1965), affg. a Memorandum Opinion of this Court. Donald had complete dominion and control over the embezzled funds during all the years at issue. Petitioners' final contention--that Donald did not exercise dominion and control over the embezzled funds but was rather a mere conduit because he was required to apply the fictitious loan proceeds to the bona fide loans in order to avoid detection--must likewise be rejected. The fact that the proceeds from the fictitious loans enabled Donald's embezzlement scheme to go undetected provided "readily realizable economic value." Had Donald's scheme been detected, not only would the scheme whereby he derived personal funds have been curtailed, but his employment at the bank would also have been in jeopardy. Under the dictates of James this "readily realizable economic value" is all that is required to establish taxable income. Furthermore, petitioners have not established any consensual recognition, express or implied, of an obligation to repay the embezzled funds. "The reasoning of James is that while an embezzler has a legal obligation to repay and may intend to repay, his legal *260 obligation and intent are not the same as an actual agreement between lendor and borrower entailing 'consensual recognition' of an obligation to repay and exact conditions of repayment." Moore v. United States, 412 F.2d 974, 979-980 (5th Cir. 1969). Consequently, although Donald would be obligated to repay all the fictitious loans he created, the embezzled funds do not rise to the status of non-taxable income because there was not the requisite consensual recognition of an obligation to repay. The bank, the party providing the money, was totally unaware of Donald's activities. Since we have held that the embezzled funds are taxable income to petitioners, we must next determine whether petitioners are entitled to deduct any of the payments made on the bona fide loans of legitimate bank customers. Respondent denies that such payments are deductible expenses under any section of the Internal Revenue Code. He further asserts that they are payments of the obligations of another and hence nondeductible. Respondent is correct in asserting that petitioners are not entitled to a deduction under section 165(a) because Donald was not making restitution to the victim of the embezzlement. Section 165(a) *261 allows a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise, but in the case of individuals such loss deduction is limited. Section 165(c)(2) does allow individuals a deduction for losses incurred in any transaction entered into for profit, though not connected with a trade or business; and respondent concedes that section 165(a) in combination with section 165(c)(2) enables embezzlers to take a loss deduction in the year in which repayment is made to the victim of the embezzlement. Rev. Rul. 65-254, 1965-2 C.B. 50. Donald, however, was not using the funds to repay the bank the amounts he embezzled. Rather Donald was using the funds to avoid detection of his embezzlement scheme. The payments made on the bona fide loans reduced the amount of the bank's receivables. In no manner were these payments repayment of the embezzled funds. [1] *262 Estate of Geiger v. Commissioner, supra at 231. Respondent is also correct in asserting that petitioners are not entitled to a deduction under section 162(a). Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Even the legitimate expenses of an illegitimate business are deductible if those expenses are ordinary and necessary. [2] However, embezzlement has been held not to be a trade or business. Mannette v. Commissioner, 69 T.C. 990 (1978). Therefore, petitioners cannot qualify for a section 162(a) business expense deduction. Nor do we believe that petitioners are entitled to deduct amounts paid on the bona fide loans under section 212. Section 212(1) authorizes a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. Petitioners assert *263 that maintaining the secrecy of the embezzlement scheme was essential to the production of Donald's income. They argue that Donald created the fictitious loans in order to produce additional income, which respondent has treated as taxable. Once a fictitious loan was created, Donald had to keep all loans in his portfolio current in order to avoid an audit of his entire loan portfolio. Had Donald not made payments on the bona fide loans, the ensuing investigation of his loan portfolio would have revealed the embezzlement scheme.
Section 212 is in pari materia with section 162. See Trust of Bingham v. Commissioner, 325 U.S. 365 (1945). [3] "To qualify as a deduction under Section 212, the expenditure must satisfy the same requirements that apply to a trade or business expense under section 162 except that the person claiming the deduction need not be in the trade or business." Fischer v. United States, 490 F.2d 218, 222 (7th Cir. 1973). The criteria for determining deductibility under section 212 are not different from those for determining deductibility under section 162(a) except that section 212 does not require a trade or business. Iowa Southern Utilities Company v. Commissioner, 333 F.2d 382 (8th Cir. 1964). *264 To be deductible under section 212 an expenditure must be (1) ordinary and necessary, (2) paid or incurred during the taxable year, and (3) for the production or collection of income. To be necessary, expenses need only be appropriate and helpful. Welch v. Helvering, 290 U.S. 111 (1933). Whether an expense is ordinary depends upon the time, place, and circumstances. Welch v. Helvering, supra.If the expense is of common or frequent occurrence in the type of activity involved, it is "ordinary" in the generally accepted meaning of that word. Lilly v. Commissioner, 343 U.S. 90 (1952). But in this case it is stipulated tha the payments made by Donald on bona fide loans of bank customers were described to those customers as loans from a private individual, who in fact did not exist. We are therefore unable *265 to agree that they constituted expenses of any kind. At most they were loans or gifts from Donald, and as such they are clearly nondeductible. Estate of Geiger v. Commissioner, supra.We therefore need not decide whether they are payments of the obligations of another, as asserted by respondent. The final issue for resolution is whether the proceeds of fictitious loans deposited in Donald's personal checking account and the Armstrong account and used to pay pre-1969 fictitious loans are deductible by petitioners. Petitioners once more contend that payments on prior fictitious loans were required in order to keep the embezzlement scheme from being discovered. The pre-1969 fictitious loans, however, were never included as gross income on petitioners' tax returns. Nor does respondent seek to include those proceeds in petitioners' income in this proceeding. It is well established that no deduction may be taken in connection with an income item unless that income has been reported in the taxpayer's gross income for the current year or some previous year. United States v. Skelly Oil Company, 394 U.S. 678 (1969); O'Meara v. Commissioner, 8 T.C. 622 (1947). [4] Since these embezzlement *266 proceeds were never included in petitioners' income, [5] we hold that no deduction is allowable for amounts applied on pre-1969 fictitious loans. In summary then, we hold that the proceeds of fictitious loans deposited in the Armstrong account and used to pay principal and interest on bona fide loans for the years 1969 through 1974 are taxable income to the petitioners. We hold further that petitioners are not entitled to a deduction for payments made on bona fide loans or on pre-1969 fictitious loans. Although petitioners allege that petitioner-wife is an "innocent spouse", there is no evidence in the record to support such a finding. Section 6013(e) places the burden of proof squarely on the spouse seeking relief. Petitioners here did not carry their burden. Accordingly, petitioners are jointly and severally liable for the deficiency in tax. Section 6013(d)(3). However, only Donald is liable for the addition to tax under section 6653(b). Respondent has neither determined nor offered any evidence *267 that any part of the underpayment was due to the fraud of petitioner-wife. Decision will be entered under Rule 155. Footnotes
1. We express no opinion as to whether repayment by bank customers of the amounts due on their loans will constitute restitution by Donald so as to entitle him to a deduction under Rev. Rul. 65-254, 1965-2 C.B. 50, and James v. United States, 366 U.S. 213, 220 (1961), revg. 273 F.2d 5↩ (7th Cir. 1959), in the year of such repayment.
2. E.g., Commissioner v. Sullivan, 356 U.S. 27 (1958) (wages and rents paid in the operation of an illegal bookmaking enterprise); Commissioner v. Tellier, 383 U.S. 687↩ (1966) (attorney's fees incurred in criminal defense of securities fraud suit).
3. While Trust of Bingham v. Commissioner, 325 U.S. 365 (1945), specifically dealt with section 23(a)(1) and section 23(a)(2), I.R.C. 1939 as amended, section 212 is the successor and, so far as is pertinent here, contains identical language to section 23(a)(2). Likewise, section 162 is the successor and, so far as is pertinent here, contains identical language to section 23(a)(1)↩.
4. But cf. Bennet v Helvering, 137 F.2d 537↩ (2nd Cir. 1943). 5. Respondent's failure to include amounts embezzled prior to 1969 in petitioners' income is not explained in the record.↩