PHYLLIS B. HARRISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harrison v. Commissioner
Docket Nos. 8550-80, 8551-80.
United States Tax Court
T.C. Memo 1983-134; 1983 Tax Ct. Memo LEXIS 658; 45 T.C.M. (CCH) 968; T.C.M. (RIA) 83134; March 14, 1983. *658 Held: Imposition of additions to tax for fraud upheld. Scott D. Anderson, for the respondent. IRWIN
MEMORANDUM OPINION IRWIN, Judge: In these consolidated cases respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Addition to Tax
Docket No.
Year
Deficiency
[1] Sec. 6653(b) 8550-80
1974
$5,930.22
$2,965.11
1975
5,991.06
2,995.53
1976
25,388.61
12,694.30
8551-80
1977
11,779.49
5,889.75
*659 Insofar as the deficiencies are concerned, we have granted respondent's motion for default judgment. Rule 123. Therefore, the only issue for decision in these cases is whether respondent has established that a portion of the underpayment of tax in each of the years here involved is due to fraud. On June 3, 1980, petitioner filed her petitions in these cases. On July 31, 1980, respondent filed his answers in which, inter alia, he made affirmative allegations in support of his determined additions to tax under section 6653(b). No replies having been filed, on October 14, 1980, pursuant to Rule 37(c), respondent filed motions for entry of orders that undenied allegations in his answers be deemed admitted. Said motions were calendared for hearing on November 19, 1980, and petitioner was given until November 6, 1980, to file replies. Subsequently, the notice of that hearing served on petitioner having been returned to the Court unclaimed, the hearing *660 was continued to December 10, 1980, and petitioner was given until December 4, 1980, to file replies. Since petitioner filed a document entitled "Answer-Docket No. 8551-80" on December 4, 1980, the hearing was again continued to January 28, 1981, and petitioner was given to January 16, 1981, to file proper replies. The hearing on respondent's motions was held before Special Trial Judge Caldwell on January 28, 1981. No appearance was made for petitioner at the hearing. At the hearing, Special Trial Judge Caldwell found that the aforementioned document filed by petitioner was intended to be filed as a reply in Docket No. 8550-80. Consequently, in an order issued January 28, 1981, he (1) ordered that the document received from petitioner be filed as a reply in docket No. 8550-80 as of December 4, 1980, (2) denied respondent's motion in docket No. 8550-80, and (3) granted respondent's motion in docket No. 8551-80, in part and denied it in part, deeming admitted the undenied allegations of fact contained in paragraphs 6(a) to 6(ab), inclusive, of respondent's answer, but not the allegations of fact contained in paragraph 6(ac). All of the facts set forth in the admitted allegations *661 of the pleadings are incorporated herein by this refence and are found as facts. At the time of filing the petitions herein, petitioner's address was P.O. Box 56, Spotsylvania, Virginia. Petitioner and her former husband filed joint Federal income tax returns for the years 1974, 1975 and 1976 with the Internal Revenue Service Center, Memphis, Tennessee. For the year 1977, petitioner filed an individual income tax return with the Internal Revenue Service Center, Memphis, Tennessee. In March 1974 petitioner became employed by Bruce Rhoads (herein Rhoads), a general contractor, who conducted his business through the following entities: Phillips, Rhoads and Strickler; Rhoads and Olson Partnership; Rhoson Construction Company, Rhoads Construction Company; Rhoads and Strickler, Inc., and Berkshire Development Company. Each of these entities was managed from Rhoads' office in Stafford, Virginia. Petitioner's duties included general office work, bookkeeping, and preparing employer's quarterly Federal tax returns (Forms 941), Forms W-2, and Forms 1099. Throughout the time of her employment by Rhoads, petitioner embezzled funds from the various entities through which Rhoads conducted *662 his business. She made checks of the entities payable to herself, negotiated such checks, and converted the proceeds to her own use. To conceal the embezzlements, petitioner falsified the related checks stubs, by indicating as payees thereon names other than petitioner's own name. The persons whose names she used on the checks stubs included employees and business creditors of the entities. In addition, when the canceled checks were returned to the entities by the bank, petitioner destroyed them. When the firm of certified public accountants engaged by Rhoads to prepare income tax returns for the various entities requested that Rhoads furnish them canceled checks rather than check stubs to use in preparing the returns, petitioner told Rhoads that, as a result of the difficulties she had encountered at a previous job when the accountant lost canceled checks, she was opposed to furnishing the canceled checks to the certified public accountants. Petitioner also forged Rhoads' signature on receipt checks of the entities, negotiated the checks, and used the proceeds for her personal needs. Petitioner further forged Rhoads' signature on checks of the entities which she used to pay *663 for goods and services for herself. Petitioner's misappropriations were discovered in December 1977 when Rhoads' recently hired bookkeeper tried to find out why a lessee had failed to pay its rent. As it turned out, the check received from the tenant for the rent had been forged with Rhoads' signature. On December 8, 1977, petitioner signed an admission, which ended: The total amount involved in the shortages is approximately $5000.00 to the bestof [sic] my knowledge for which I am responsible. I intend to replace all funds taken and will give my complete assistance in correcting the records of various accounts. I have written this statement consisting of this and no other handwritten pages and have initaled [sic] each page and all corrections. No promises of any kind have been made to me to cause me to give this statement. I freely sign this final page because it contains the truth to the best of my knowledge and belief. The $5,000 estimate was far less than the true amount misappropriated by petitioner and hence, the last sentence was untrue. Petitioner reported no income from embezzlement on her tax returns for the years in issue. The tax returns filed by *664 petitioner and her former husband for the years 1974, 1975, and 1976 disclosed taxable income of $10,932.95, $11,019.03, [2] and $15,725.88, respectively. Petitioner's income tax return for the year 1977 showed tax table income of $3.863.98 (corrected by respondent as a result of mathematical and/or clerical errors to $5,531.25). From 1974 through 1977 funds were misappropriated (embezzled) by petitioner for her own use and benefit in at least the following amounts: [3]
Entities
1974
1975
1976
1977
Phillips, Rhoads and
Strickler  $14,483.89
$11,404.75
$10,369.05
$ 1,004.36
Rholer Partnership
10,691.38
Rhoads and Strickler, Inc.
4,324.44
6,900.07
44,428.95
13,291.86
Rhosan Construction Co.
8,219.09
Rhoads and Olsen Partnership
260.00
$18,808.33
$18,304.82
$54,798.00
$33,466.69
*665 The burden of proving fraud is on respondent, and he must affirmatively establish it by clear and convincing evidence. Section 7454(a); Rule 142. Respondent must prove fraud in each year involved; proof of fraud for one year is insufficient to satisfy respondent's burden of proof on the issue of fraud for another year. Drieborg v. Commissioner,225 F.2d 216, 220 (6th Cir. 1955). To establish fraud, respondent must show that petitioner omitted her embezzlement income with a fraudulent intent, i.e., with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941); Danenberg v. Commissioner,73 T.C. 370, 393 (1979). Inasmuch as direct evidence of such intent is seldom available, respondent may meet his burden of proof with circumstantial evidence. Stoltzfus v. United States,398 F.2d 1002, 1005 (3rd Cir. 1968); Stone v. Commissioner,56 T.C. 213, 223-224 (1971). We hold that respondent has carried his burden of proof as to fraud for each of the years before us. Illegal gains, including gains from embezzlement, constitute gross income *666 as do other clearly realized accessions to wealth under the taxpayer's complete dominion. Section 1.61-14(a), Income Tax Regs.; James v. United States,366 U.S. 213 (1961); Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). Although the mere failure to report income, standing alone, may not support a finding of fraud, the consistent failure to report substantial amounts of income over a period of years has been said to constitute evidence of fraudulent intent. Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Agnellino v. Commissioner,302 F.2d 797, 801 (3rd Cir. 1962), affg. on this issue a Memorandum Opinion of this Court; Schwarzkopf v. Commissioner,246 F.2d 731, 734 (3rd Cir. 1957), affg. a Memorandum Opinion of this Court. Here, the evidence shows a consistent pattern of substantial omissions of income by petitioner over a 4-year period. This regular pattern of understatements is strong evidence of intent to evade a tax believed to be owing. Petitioner embezzled from her employer and destroyed canceled checks to conceal her *667 embezzlement. When Rhoads first discovered petitioner's misappropriations, petitioner admitted taking money but minimized the amount she had taken. Petitioner's misrepresentation and concealment of her misappropriations contradict an innocent intent. As we stated in McGhee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (1975) (where the taxpayer swindled and defrauded his employer in a scheme in which invoices to customers were inflated): it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with intent to evade tax. Rogers v. Commissioner,111 F.2d 987 (C.A.6, 1940). The legal relevancy of such evidence is based upon logical principles which go to negate innocent intent. United States v. Bridell,180 F.Supp. 268 (N.D. Ill. 1960); Pappas v. United States,216 F.2d 515 (C.A.10, 1954). Petitioner claims that the imposition of the additions to tax under section 6653(b) would be unfair and unjust since she has *668 already served a person term for this "same crime" and she has been making repayments to Rhoads.
Petitioner's first argument appears to be that the imposition of the section 6653(b) additions to tax would violate her right against double jeopardy. The only crime for which it appears the petitioner was sentenced to prison was embezzlement, not filing fraudulent income tax returns. Moreover, even if the government previously had criminally punished, or sought to so punish, petitioner for filing fraudulent returns, there would be no protection against double jeopardy here since the sanction exacted by section 6653(b), being an addition to tax rather than a penalty, is civil in nature, not criminal. Helvering v. Mitchell,303 U.S. 391 (1938); Kenney v. Commissioner,111 F.2d 374, 375-376 (5th Cir. 1940); Black Forge, Inc. v. Commissioner,78 T.C. 1004, 1013 (1982). Deductions for repayments made by petitioner in the years of her illegal activities would, of course, be allowable within the limitations of section 165(c)(2) in such years. Norman v. Commissioner,407 F.2d 1337 (3rd Cir. 1969), affg. a Memorandum Opinion *669 of this Court; Yerkie v. Commissioner,67 T.C. 388 (1976). Petitioner, however, has not established that she made any repayments in those years [4] or in the years succeeding her illegal activities.Moreover, restitution in favor of petitioner's employer simply cannot eradicate petitioner's fraudulent intent to evade a tax believed to be owing at the time she filed her tax returns for the years 1974 through 1977, and it is this intent which is determinative of our decision herein. See Benes v. Commissioner,42 T.C. 358, 384 (1964), affd. 355 F.2d 929 (6th Cir. 1966). Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. As a result of mathematical and/or clerical errors, petitioner and her former husband showed a taxable income of $10,896.23 on line 47 of their 1975 Form 1040. Based upon his correction of such errors, respondent found that the 1975 Form 1040 disclosed a taxable income of $11,019.83 and has so alleged in paragraph 6(b) of his answer filed in docket No. 8550-80. Petitioner has admitted the truth of the affirmative allegations set out in such paragraph 6(b). It appears, however, from the copy of the 1975 Form 1040 introduced into evidence that $11,019.03 was disclosed as taxable income. ↩
3. Since we are concerned only with the additions to tax for fraud herein, the amounts set forth are based upon the allegations of respondent's answers deemed admitted under Rule 37(c) and those admitted by petitioner in her reply. In his proposed findings of fact, respondent's counsel requested that we find that in 1974, 1975, and 1976, petitioner embezzled at least $18,808.53, $18,720.40 and $54,798.68, respectively, and inserted as references to support these proposed findings the notice of deficiency and Exhibit E (Indictments at Stafford County). The figure of $18,808.53 appears to be a typographical error inasmuch as the notice of deficiency and the indictments indicate the correct amount for 1974 is $18,808.33. The notice of deficiency indicates that petitioner embezzled $18,720.40 in 1975 and $54,798.68 in 1976. The indictments, however, indicate that petitioner was charged with embezzling $18,304.82 in 1975 and $54,797.97 in 1976.↩
4. We note that if an acknowledgment was made by petitioner during the years at issue of her obligation to repay the illegally obtained funds, it would not transform such funds into borrowed money, which is not gross income. Mais v. Commissioner,51 T.C. 494, 499 (1968). See Hauser v. Commissioner,T.C. Memo. 1970-207↩.