FRIEDMAN, Circuit Judge.
 

 The question for decision in this appeal from the judgment of the United States Claims Court dismissing an income tax refund suit is whether in determining the additional minimum income tax on “tax preference” items imposed by sections 56 and 55 of the Internal Revenue Code, interest the taxpayers paid on borrowings to finance the purchase of debt securities is directly deductible from the interest they received from the securities in computing their adjusted gross income (as the taxpayers contend), or instead (as the Internal Revenue Service and the Claims Court held) is deductible only as itemized deductions in computing taxable income. We agree with the Claims Court and therefore affirm.
 

 I
 

 A. This case involves federal income taxes for the years 1978 and 1979. For those years the Internal Revenue Code (Code) imposed, in addition to ordinary income taxes, a minimum tax on “items of tax preference.” I.R.C. §§ 56(a)(1976) (1978 tax year); 55(1982) (1979 tax year). Tax preference items, within the meaning of those provisions, included “excess itemized deductions.” These were the amounts by which the sum of the itemized deductions for any taxable year (excluding certain specified allowable deductions) exceeded 60 percent of the taxpayer’s adjusted gross income for that year. I.R.C. § 57(a)(1), (b)(1) (1976
 
 &
 
 Supp. V 1976).
 

 During 1978 and 1979, the taxpayers, Eli Wallach and Anne (Jackson) Wallach (prominent actors), entered into interest arbitrage transactions in which they purchased a large principal amount of low-risk, fixed-interest debt securities and financed the purchases mainly through short-term loans with fluctuating interest rates. The profitability of the transactions lay in the “spread” between the interest received on the purchased debt securities and the (hopefully) lower interest paid on the funds borrowed to finance the purchases.
 

 The specific transactions in the years in issue involved the Wallachs’ purchase, through a securities broker, of four United States Treasury notes, a negotiable bank note, and a negotiable certificate of deposit. The aggregate cost of those securities was $16,640,596. Contemporaneous with the purchase of those securities, the Wal-lachs financed most of their purchase cost by borrowing in the short-term funds market. They did this through a repurchase agreement with the broker, under which they sold the securities back to the broker for $16,334,794, subject to an obligation of the parties to resell and repurchase the securities at the sale-back price of $16,334,-794. The $305,802 difference between the original purchase price and the repurchase price represented the Wallachs’ investment in the transactions, which they paid to the broker.
 

 The Wallachs sustained significant losses on the transactions due to an increase in the interest rates on their borrowed funds and their failure to terminate the transactions quickly. In 1978, their interest income from the securities was $320,967, and their interest costs on the borrowed funds were $415,806, resulting in a net loss of $94,839. In 1979, their interest income was $699,296, and their interest costs on the borrowed funds were $1,020,985, resulting in a net loss of $321,689.
 

 In their federal income tax returns for 1978 and 1979, the Wallachs reported the interest received on the purchased debt securities as part of their gross income and the interest paid on the short-term borrowings as part of their itemized deductions. In making their minimum tax calculations for those years, however, the Wallachs offset the financing costs against the interest received. By doing so, they limited their itemized interest deductions from adjusted gross income to each year’s net loss on the
 
 *1123
 
 transaction, thus limiting their minimum tax liability.
 

 On audit, the Internal Revenue Service (Service) rejected the Wallachs’ minimum tax determination. The Service determined that in making those calculations the Wal-lachs were required to include the interest income in their adjusted gross income and to deduct the interest costs as part of their itemized deductions (which was the method the Wallachs used in reporting the interest income and expenses in the other portions of their returns). These calculations resulted in significantly greater total itemized deductions exceeding 60 percent of adjusted gross income than did the Wal-lachs’ approach. The Service treated those “excess itemized deductions” as tax preference items and assessed against the Wal-lachs the additional minimum taxes to which those deductions were subject under sections 56 and 55 of the Code: $28,364.25 for 1978, and $97,941.71 for 1979.
 

 B. The Wallachs paid the deficiencies and, after the Service denied their claims for refund, filed the present action in the Claims Court. They contended principally that as applied to them the minimum tax was unconstitutional because it was a tax on capital. On cross-motions for summary judgment, the court rejected the constitutional claim and upheld the Service’s determination. The court granted summary judgment for the government and dismissed the complaint.
 
 Wallach v. United States,
 
 8 Cl.Ct. 631 (1985).
 

 The court rejected the Wallachs’ contention that the “minimum tax, as applied by the IRS in this particular case, was a tax on a direct cost of earning income and, therefore, amounted to the unconstitutional taxation of capital.”
 
 Id.
 
 at 632-33. Noting that the Wallachs admitted that “they [were] not engaged in the business of dealing or trading in securities” and therefore must be viewed as “‘casual’ investors in securities,” the court discerned “no constitutional inhibition against requiring the plaintiffs to report their total income from securities during a particular year as part of gross income, while permitting them to include their total securities expense during the year among their deductions from gross income.”
 
 Id.
 
 at 634. The court saw no “constitutional objection to the action of the IRS in applying the minimum tax to the excess deductions.”
 
 Id.
 
 The court viewed the Wallachs’ “other contentions” as “subsidiary to their main argument” and did not discuss them.
 
 Id.
 

 II
 

 A. 1. The Code permits the deduction of interest paid on indebtedness in two situations. If the debt arises out of the operation of the taxpayer’s trade or business, the interest is deductible under sections 62 and 162 in determining adjusted gross income. If, however, the debt is personal, the interest paid is deductible from adjusted gross income (and not directly from gross income) as an itemized deduction under sections 63 and 163 in determining taxable income.
 

 The Wallachs conceded in the Claims Court, and repeat the concession here, that they are not engaged in the trade or business of securities trading. It therefore follows that the interest they paid in connection with their interest arbitrage transactions is deductible only under sections 63 and 163 as an itemized deduction from their adjusted gross income in determining their taxable income. Indeed, the Wallachs admitted as much, since in their returns for the years at issue they deducted their interest payments from their adjusted gross income as itemized deductions in determining their taxable income and not from their gross income in determining adjusted gross income.
 

 To the extent that those itemized deductions exceeded 60 percent of the Wallachs’ adjusted gross income, the excess was subject to the minimum tax imposed by sections 56 and 55 of the Code for the years 1978 and 1979, respectively.
 

 2. The Wallachs attempt to avoid the unambiguous language of the Code governing the deductibility of interest payments by arguing that since the purchase
 
 *1124
 
 of the bonds and the borrowing of the funds to finance the purchase constituted a single integrated transaction, the imposition of the minimum tax upon the “excessive” itemized deductions is unconstitutional because it is a tax not upon income but upon capital. In effect, they argue that the interest they paid should be viewed as a capital cost of engaging in the arbitrage transactions and therefore should be deductible from their gross income in determining their adjusted gross income from those transactions, just as any other cost of doing business is deductible.
 

 The flaw in this argument is that the Wallachs admittedly were not in the securities business. Congress has permitted deductions of interest from gross income only if the interest related to an indebtedness incurred in carrying on a trade or business. There is nothing in section 62 that also permits deduction from gross income of interest paid on all transactions entered into for profit. Nor is there anything in the unambiguous language of sections 56 and 55 imposing the minimum tax on itemized deductions that exceed 60 percent of adjusted gross income that provides an exception for “excess itemized deductions” reflecting interest paid on an integrated transaction entered into for personal profit.
 

 The decision whether to permit particular deductions and in what circumstances lies within the discretion of Congress.
 
 See Commissioner v. Sullivan,
 
 356 U.S. 27, 28, 78 S.Ct. 512, 513-14, 2 L.Ed.2d 559 (1958). Like the Claims Court, we see no constitutional objection or other infirmity in the Service’s ruling that in determining the application of the minimum tax, the Wallachs were required to deduct the interest they paid to finance their arbitrage transactions as itemized deductions from their adjusted gross income.
 

 The Wallachs rely primarily on two cases, neither of which aids them. As the Claims Court pointed out, in the first case,
 
 Davis v. United States,
 
 87 F.2d 323 (2d Cir.),
 
 cert. denied,
 
 301 U.S. 704, 57 S.Ct. 937, 81 L.Ed. 135 (1937), the court “actually upheld a statutory provision which specifically limited deductions for losses sustained from sales or exchanges of stocks and bonds to the extent of any gains realized by the taxpayer from similar sales or exchanges during the same year.” 8 Cl.Ct. at 633. The Wallachs assert that in dictum
 
 Davis
 
 “acknowledged] that certain necessary costs of earning income constitutionally can not be denied.” Nothing in
 
 Davis
 
 even suggests, however, that Congress could not constitutionally limit interest deductions from gross income to those incurred in carrying on a trade or business, which the Wallachs admit they were not doing in their arbitrage transactions.
 

 The other case,
 
 Winkler v. United States,
 
 230 F.2d 766 (1st Cir.1956), dealt with the computation of the gross income of a professional gambler from his horse-racing betting.
 
 Winkler
 
 stated that, “Congress is without power to deny the professional gambler the right to offset his winnings on each race with his losses on that same race before coming to a ‘gain’ of the type which constitutes gross income.”
 
 Id.
 
 at 776. It distinguished the situation of a professional gambler from that of a “casual” one, whose losses could be deducted only from adjusted gross income in determining taxable income. Although the Wal-lachs rely on
 
 Winkler
 
 for “its elucidation of the integrated transaction approach,” the case does not support, but rather undercuts, their position.
 
 Winkler
 
 permitted the deduction of a gambler’s expenses in determining his adjusted gross income only if gambling was the taxpayer’s business. The Wallachs, however, admit that they are not in the business of securities trading, which is the activity in connection with which they took the deductions.
 

 The Wallachs also rely upon a dictum in
 
 Hochman v. Commissioner,
 
 T.C.M. (P-H) ¶ 86,024 (Jan. 22, 1986), that a casual nonprofessional gambler may deduct, as a return of capital, the cost of a winning horse-race ticket. The reasoning of the Tax Court was that “ [t]o the extent that the cost of his winning ticket is included in the payoff which petitioner receives at the cashier’s window on a winning race, there
 
 *1125
 
 fore, petitioner has only recovered his capital, and is entitled to exclude the amount of that winning ticket from his gross receipts in order to arrive at gross income within the meaning of section 61.”
 
 Id.
 
 at 93.
 

 In the present case, however, the Wal-lachs are not contending that the interest they received was a return of capital, but that the interest they paid was deductible in determining adjusted gross income. On that issue
 
 Hochman
 
 supports the government rather than the Wallachs, since the Tax Court recognized that for a casual gambler “not engaged in such trade or business ...” his losses are allowable as itemized deductions only against his adjusted gross income for the purpose of arriving at taxable income.
 
 Id.
 
 at 92.
 

 B. Alternatively, the Wallachs argue that section 58(h) of the Code barred the imposition of the minimum tax against them. That provision states:
 

 The Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer’s tax under this subtitle for any taxable years.
 

 The Senate Committee Report on the statute explained the purpose of this provision as follows:
 

 There are certain cases under present law in which a person derives no tax benefit from a tax preference. For example, if an individual has no adjusted gross income because of deductions for accelerated depreciation on real property (an item of tax preference under the minimum tax) and also has itemized deductions (which under these circumstances he is unable to use), the tax benefit from the accelerated depreciation deductions may be reduced or eliminated because of the unused itemized deductions. However, the individual may still be subject to the minimum tax on the accelerated depreciation____ To deal with this problem specifically, the amendment instructs the Secretary of the Treasury to prescribe regulations under which items of tax preference (of both individuals and corporations) are to be properly adjusted when the taxpayer does not derive any tax benefit from the preference.
 

 S.Rep. No. 938, 94th Cong., 2d Sess. 113-114,
 
 reprinted in
 
 1976 U.S.Code Cong. & Ad.News 2897, 3439, 3548-49.
 

 Although the Secretary has not issued regulations under this section, in Revenue Ruling 80-226, 1980-2 C.B. 26, the Service stated that tax preference items are deemed to have provided a tax benefit only to the extent that they actually reduce a taxpayer’s income. If because of other deductions a taxpayer’s regular tax liability would be the same whether or not the tax preference items were deducted, then those tax preference items do not provide a tax benefit and should not be subject to the minimum tax.
 

 In this case, the Wallachs received a tax benefit for each dollar of interest costs they deducted from their adjusted gross income. Had they not taken those deductions, their taxable income to that extent would have been higher, and they would have had to pay a higher tax. Although their interest deductions were limited under section 163(d) of the Code to the amount of their arbitrage interest income, those deductions provided a tax benefit by reducing their taxable income. The fact that they did not receive a tax benefit from the nondeductible excess interest costs is immaterial, since those excess charges were not included in determining the minimum tax.
 

 The judgment of the Claims Court dismissing the complaint is affirmed.
 

 AFFIRMED.