JAMES H. O'HAGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Hagan v. Commissioner
Docket No. 20242-92.
United States Tax Court
T.C. Memo 1995-409; 1995 Tax Ct. Memo LEXIS 406; 70 T.C.M. (CCH) 498; August 22, 1995, Filed *406 Decision will be entered under Rule 155. James H. O'Hagan, pro se. John C. Schmittdiel, for respondent. SCOTT, Judge SCOTT
MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1989 in the amount of $ 436,057, and an addition to tax under section 6651(a) [1] in the amount of $ 113,836. Respondent has conceded that petitioner is not liable for the addition to tax under section 6651(a), leaving for decision whether the amounts repaid by petitioner in 1989 for clients' funds misappropriated in prior years is a reduction in petitioner's 1989 income or a deduction under section 165(c)(2), which is not deductible for alternative minimum tax purposes. All of the facts have been stipulated and are found accordingly. At the time of the filing of the petition *407 in this case, petitioner resided in St. Paul, Minnesota. Petitioner timely filed his Federal income tax return for the taxable year 1989. In January 1990, petitioner was charged with eight counts of theft in violation of Minn. Stat. section 609.52, subds. 2(1), 2(5)(a) (by temporary control) and nine counts of theft in violation of Minn. Stat. section 609.52, subd. 2(4) (by swindle). Petitioner was convicted on the eight counts of theft by temporary control and found not guilty on the nine counts of theft by swindle. Petitioner appealed his conviction of theft by temporary control. His conviction was affirmed. State v. O'Hagan, 474 N.W.2d 613 (Minn. Ct. App. 1991). The appellate court in its opinion summarized the facts substantially as follows. Between 1963 and 1989, petitioner practiced law with the firm of Dorsey & Whitney in Minneapolis, Minnesota (Dorsey & Whitney or the firm). Although petitioner was a senior partner in the firm and handled many litigation matters, he enjoyed considerable independence, and, to some extent, operated his own practice in the firm. From 1986 to 1988, petitioner was one of the top two producers of the firm, billing *408 in excess of $ 2 million annually. From the late 1970's through November 1989, petitioner defended Northrup King & Co. (Northrup) and its parent corporation, Sandoz, Inc., in a class action suit referred to as the "Boose" litigation. In October 1986, the parties reached an oral agreement to settle the Boose litigation, and on October 29, 1986, Northrup wired $ 1 million to the Dorsey & Whitney general trust account. On that same day, at petitioner's direction, $ 500,000 was transferred into a separate interest-bearing account known as the Northrup account. Petitioner was the sole authorized signer on the Northrup account. On the following day, at petitioner's direction, two checks were drawn on the remaining $ 500,000 in the Dorsey & Whitney general trust account. These two checks were used by petitioner to pay off personal outstanding loans. On January 7, 1987, three checks were drawn at petitioner's direction on the $ 500,000 that had been previously transferred to the Northrup account. On February 27, 1987, again at petitioner's direction, a check in the amount of $ 250,000 was drawn on the Northrup account made payable to Dakota County State Bank. The four checks were used for *409 petitioner's personal purposes. In August 1988, the court in the Boose litigation approved payments to the plaintiffs and, thereafter, substantially all of the $ 1 million was paid out to the plaintiffs and their counsel. By this time, petitioner had transferred nearly all of the $ 1 million back into the Northrup account. In the fall of 1989, when questions arose as to who had received the interest on the escrow funds, Dorsey & Whitney audited the account and discovered petitioner's diversion. Petitioner subsequently reimbursed Dorsey & Whitney for the interest due Northrup during the period that the funds were in Dorsey & Whitney's control. During 1987, petitioner represented the Mayo Clinic (Mayo) in certain medical malpractice litigation. In January 1987, petitioner settled a lawsuit brought against Mayo for $ 270,000. Petitioner informed Mayo that the case had settled for $ 595,000. Mayo then deposited $ 595,000 into an interest-bearing account on which petitioner was the sole signer. Petitioner used the excess $ 325,000 to pay off various personal loans. Petitioner settled a second lawsuit on behalf of Mayo for $ 25,000, yet informed Mayo that the settlement was for $ 250,000. *410 Petitioner again diverted the excess funds from the Mayo account. In December 1987, petitioner informed Mayo that a third case had been settled, and Mayo sent petitioner a check for $ 1.5 million, which was put into a client trust fund. From December 31, 1987, through March 17, 1988, petitioner withdrew $ 1,384,050.54 from this trust account for personal purposes. In October 1989, petitioner and Mayo concluded that the cases would not be settled in the near future. Unaware that petitioner had withdrawn any money from the trust account, Mayo requested that the money be returned. Within several days, petitioner sent Mayo's representative a check for $ 1.7 million. Six of the eight counts charging petitioner with theft by temporary control and nine counts charging petitioner with theft by swindle were with respect to the Mayo funds. Petitioner filed a Federal income tax return for 1986 reporting adjusted gross income of $ 318,680 and taxable income of $ 77,913. Petitioner subsequently filed an amended return reporting additional gross and taxable income of $ 500,000. Petitioner in explanation of the increase stated: Upon review of the prior years returns it was discovered an *411 error was made in the determination of income and that amounts previously considered to be loans may be classified as income by the IRS.
Petitioner's Federal income tax return for 1987 reported adjusted gross income of $ 323,054 and taxable income of $ 135,876. Petitioner subsequently filed an amended return for 1987 reporting additional gross and taxable income of $ 1,457,474. The amended return for 1987 contained the same explanation as the amended return for 1986. Petitioner's Federal income tax return for 1988 reported adjusted gross income of $ 4,372,959 and taxable income of $ 3,890,443. Petitioner also filed an amended return for 1988 reporting additional gross and taxable income of $ 115,680 and included the same explanation as in the 2 prior years. Petitioner filed his amended returns for 1986, 1987, and 1988 prior to being contacted by a revenue agent regarding examination of his income tax liabilities for those years. Petitioner's Federal income tax return for 1989 reported adjusted gross income of $ 875,973, and taxable income of "none". On his 1989 return, in arriving at the $ 875,973 of adjusted gross income, petitioner deducted $ 2,073,154 as "repayment of loans *412 previously reported as income." On Form 8275, Disclosure Statement Under Section 6661, petitioner stated: Taxpayer previously reported loans construed to be income in adjustment gross income. Taxpayer believes that the repayment of the loans should be a deduction in computing adjusted gross income.
Respondent in her notice of deficiency determined that petitioner was entitled to no deduction under section 1341 for repayments of misappropriated funds of clients' in the amount of $ 2,073,154, but that petitioner was entitled to miscellaneous itemized deductions computed as follows: Miscellaneous itemized deductions
$ 8,914
per return
Repayment of misappropriated
2,073,154
funds
Total
2,082,068
Less: 2% of corrected adjusted
58,983
gross income
Allowable deduction
2,023,085
Respondent determined that miscellaneous itemized deductions were not allowable deductions in computing petitioner's alternative minimum tax for 1989. The entire amount of the deficiency which is in dispute results from an increase in petitioner's alternative minimum tax. Petitioner contends that the proceeds reported in years prior to the one in issue were actually loan proceeds and, *413 therefore, should not have been reported as income. Petitioner further contends that this Court should use the doctrine of equitable recoupment to give him the full benefit of the deduction and to mitigate the effect of the increased tax rates in the years the income was reported. In the alternative, petitioner contends that he is entitled to a deduction under section 1341 for repayment of the loan proceeds. In the second alternative, if we find that petitioner properly reported the amounts as income, petitioner argues that the deduction for repayment of misappropriated funds should not be characterized as a miscellaneous itemized deduction. It is respondent's position that petitioner properly reported as income the misappropriated funds and that the deduction for repayment of these funds is properly characterized as a miscellaneous itemized deduction. Initially we point out that the only year before us is 1989. Therefore, whether petitioner properly reported the amounts of clients' funds he used in prior years is before us only as it might affect petitioner's claim to application of section 1341, or his claim to equitable recoupment. However, since the parties discuss the issue *414 of whether petitioner properly reported the amounts of clients' funds he used in prior years as income, we will consider that question as background to the issue of the nature of petitioner's deduction for repayment in the year here in issue. Section 61 broadly defines gross income as "all income from whatever source derived", unless otherwise provided. It has long been held that amounts obtained by a taxpayer through various types of illegal means are included in taxable income in the year obtained, even though the taxpayer may be potentially liable to reimburse the victim. James v. United States, 366 U.S. 213 (1961) (embezzlement); Rutkin v. United States, 343 U.S. 130 (1952) (extortion); Briggs v. United States, 214 F.2d 699 (4th Cir. 1954) (fraud); McSpadden v. Commissioner, 50 T.C. 478 (1968) (false mortgage scheme); Leaf v. Commissioner, 33 T.C. 1093 (1960), affd. per curiam 295 F.2d 503 (6th Cir. 1961) (fraud). In James v. United States, supra, the Supreme Court *415 held that embezzled funds are to be included in the taxable income of an embezzler in the year in which the funds are misappropriated. The Supreme Court stated: When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." * * * In such case, the taxpayer has "actual command over the property taxed--the actual benefit for which the tax is paid," * * * This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. * * *
James v. United States, supra at 219. It is the control which the taxpayer has over the amounts illegally obtained that causes such amounts to be taxable income to the recipient, and the possibility that at some later date the taxpayer may be required to make restitution does not cause receipts from an illegal activity not to be income in the year *416 the amounts are received. McSpadden v. Commissioner, supra at 490. Petitioner contends that the transactions here involved should be properly characterized as loans for Federal income tax purposes. As opposed to unlawful economic gains, bona fide loans are not included in income because the temporary economic benefit is offset by the corresponding obligation to repay them. Moore v. United States, 412 F.2d 974, 978 (5th Cir. 1969); United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967). Whether a transaction for Federal income tax purposes constitutes a loan is a factual question. However, a distinguishing characteristic of a loan is the knowledge of each party to the transaction that there is a loan and the intention of each party that the money advanced be repaid. Moore v. United States, supra; Commissioner v. Makransky, 321 F.2d 598, 600 (3d Cir. 1963), affg. 36 T.C. 446 (1961). Courts have looked at whether there was an express or implied consensual recognition of the obligation to repay, *417 and whether each party views the transaction as a loan. Collins v. Commissioner, 3 F.3d 625, 631 (2d Cir. 1993), affg. T.C. Memo. 1992-478; In re Diversified Brokers Co., 487 F.2d 355, 357-358 (8th Cir. 1973); United States v. Rosenthal, 470 F.2d 837, 842 (2d Cir. 1972); Moore v. United States, supra at 979-980. Based on the facts in this case, we conclude that the transactions here involved should not be considered bona fide loans for Federal income tax purposes. Petitioner took money from his clients' trust funds without their knowledge or consent and maintained control over these funds until repayment. [2] The fact that petitioner repaid the money before criminal charges were brought against him is irrelevant to a determination of petitioner's taxable income in the year in which the illegal taking occurred. There was no agreement, express or implied, between petitioner and his clients that petitioner could borrow the clients' funds, and, hence, the amounts were properly includable in petitioner's income for the years in which *418 petitioner appropriated the funds for his own benefit. Since petitioner on his amended returns properly reported the appropriated clients' funds as income for those years, petitioner is entitled to a nonbusiness deduction under section 165(c)(2) in the year of repayment. It would be incumbent on petitioner to show a basis other than the fact of repayment in order to be entitled to a deduction in the year of repayment under some section of the Code other than section 165(c)(2). Petitioner has made no such showing. Mannette v. Commissioner, 69 T.C. 990, 992 (1978); Yerkie v. Commissioner, 67 T.C. 388, 390 (1976); Fox v. Commissioner, 61 T.C. 704, 715 (1974). *419 It is petitioner's alternate contention that the repayment of the illegally obtained funds entitles him to a deduction under section 1341. Section 1341 [3] provides relief to taxpayers who receive income in one year under a claim of right and are required to make refunds in a later year in excess of $ 3,000 when the tax benefits of the repayment are less than the tax paid in the earlier year. Section 1.1341-1(a)(2), Income Tax Regs., defines "income included under a claim of right" as an item that is included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item. *420 In the instant case, it is clear that petitioner is not entitled to a deduction under section 1341. In Yerkie v. Commissioner, supra, this Court held that section 1341 did not apply to the restoration of illegally obtained funds. This is in accord with other courts that have decided this issue. McKinney v. United States, 574 F.2d 1240 (5th Cir. 1978), Herzog v. United States, 89-2 USTC par. 9418 (D. Minn. 1989); Perez v. United States, 553 F. Supp. 558 (M.D. Fla. 1982). Therefore, we uphold respondent's determination on this issue. Petitioner contends that, if we decide that the income was properly reportable in prior years, we should reject respondent's characterization of petitioner's repayment in 1989 as a miscellaneous itemized deduction. The net result of considering the repayment as a miscellaneous itemized deduction is that petitioner is subject to $ 436,057 of tax, since for alternative minimum tax purposes, the deduction is disallowed. Section 55(a) imposes a tax equal to the excess, if any, of the tentative minimum tax for the taxable year over *421 the regular tax for the taxable year. For individuals, the tentative minimum tax, under section 55(b)(1), for the taxable year is 21 percent of so much of the alternative minimum taxable income for the taxable year as exceeds the exemption amount, reduced by the alternative minimum tax foreign tax credit for the taxable year. Section 55(b)(2) defines alternative minimum taxable income as the taxable income of the taxpayer for the taxable year determined with the adjustments provided in sections 56 and 58, and increased by the amount of the items of tax preference described in section 57. Section 56(b)(1)(A)(i) provides that in determining the amount of alternative minimum taxable income of any taxpayer other than a corporation, no deduction is allowed for miscellaneous itemized deductions. Section 67(b) defines miscellaneous itemized deductions as itemized deductions other than those specifically listed in section 67(b)(1) through (13), none of which include a deduction for the repayment of illegally received funds. Under section 63(d), itemized deductions are all deductions except the deductions allowable in arriving at adjusted gross income, and the deduction for personal exemptions. *422 Deductions allowable in arriving at adjusted gross income are generally within the scope of ordinary and necessary business expenses, including trade and business deductions, losses from the sale or exchange of property, and deductions attributable to royalties. Sec. 62(a). Repayment of illegally received income is not included in these deductions, and is generally not considered an ordinary and necessary business expense. See Mannette v. Commissioner, 69 T.C. at 992; Yerkie v. Commissioner, 67 T.C. at 390; Fox v. Commissioner, 61 T.C. at 715. Without further analysis, it is clear from a reading of the statute that the only deductions that are not characterized as miscellaneous itemized deductions are ordinary and necessary business expenses, and those deductions specifically enumerated in sections 67(b) and 62(a). Petitioner argues that to consider the repayment of funds illegally received in a prior year as an itemized miscellaneous deduction treats a taxpayer who has illegal receipts differently from a taxpayer who repaid income received legally. However, any taxpayer who has income in *423 one year offset by a deduction under section 165(c)(2) will have this same treatment for alternative minimum tax purposes. See, e.g., Wallach v. United States, 800 F.2d 1121 (Fed. Cir. 1986). We, therefore, uphold respondent's determination that the deduction for repayment of the clients' funds used by petitioner for his own benefit is properly characterized as a miscellaneous itemized deduction on petitioner's 1989 return. Finally, petitioner argues that even if this Court finds that the illegally borrowed funds were properly taxable in the year of receipt, we should use the doctrine of equitable recoupment to allow him to recover the entire amount in controversy, plus a refund of $ 348,344 because the tax rates in the year the income was reported were higher than in 1989. "[A] claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories." United States v. Dalm, 494 U.S. 596, 605 n.5 (1990). Here, there has been no inconsistent treatment of a single transaction, item, or event. Petitioner's claim of equitable recoupment is based *424 on the assumption that he properly paid tax on amounts which he improperly took from client trust funds in prior years. His repayment of these amounts in 1989 was a separate transaction and, as we have held, was properly deductible as a miscellaneous itemized deduction for 1989. There is simply no inconsistency between the treatment of these transactions and, therefore, no basis for petitioner's equitable recoupment claim. See McCarthy Trust v. Commissioner, 86 T.C. 781 (1986), affd. 817 F.2d 558 (9th Cir. 1987). Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The Minnesota statute under which petitioner was convicted provides in pertinent part: Whoever does any of the following commits theft * * * (1) intentionally and without claim of right takes, uses, transfers, conceals, or retains possession of moveable property of another without the other's consent and with * * * (5) * * * intent to exercise temporary control only and; (a) the control exercised manifests an indifference to the rights of the owner or the restoration of the property to the owner.
Minn. Stat. Ann. sec. 609.52, subds. 2(1), 2(5)(a)↩ (West 1987).
3. SEC. 1341(a) General Rule.--If-- (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and (3) the amount of such deduction exceeds $ 3,000,
then the tax imposed by this chapter for the taxable year shall be the lesser of the following: (4) the tax for the taxable year computed with such deduction; or (5) an amount equal to-- (A) the tax for the taxable year computed without such deduction, minus (B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).↩