**William A. PURDEY and Frances C. Purdey, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 95–535T.**

United States Court of Federal Claims.

Oct. 31, 1997.

Status Report filed August 18, 1997; Plaintiff's Motion For Entry Of Judgment filed August 25, 1997.

Michael A. Guariglia, McCarter & English, Newark, NJ, for plaintiffs, with whom were John K. Bradley and Frank A. Racaniello, of counsel.

G. Robson Stewart, Tax Division, Department of Justice, Washington, DC, for defendant, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, and David Gustafson, Assistant Chief, of counsel.

## OPINION

MARGOLIS, Judge.

In this tax refund action, currently before the Court on plaintiffs' and defendant's cross-motions for summary judgment, plaintiffs claim that certain deductions allowed under 26 U.S.C. § 183 are also permitted in calculating plaintiffs' Alternative Minimum Tax.

## FACTS

During the years 1984, 1985, 1986, 1988, and 1989 (hereinafter "tax years at issue"), plaintiffs, William A. Purdey and Frances C. Purdey, conducted thoroughbred breeding and racing activities at their ranch in Colts Neck, New Jersey. These activities included keeping and maintaining stallions, broodmares, foals, yearlings, and horses of racing age at the ranch. William Purdey personally managed operations at the ranch, including making decisions about buying and selling horses, and which horses to breed.

During the tax years at issue, plaintiffs' thoroughbred breeding and racing activities generated income in the form of racing purses, horse sale gains, stud fees, boarding fees, and New Jersey State Breeders Awards. At the same time, however, plaintiffs' thoroughbred breeding and racing activities also generated expenses including, but not limited to: costs for trainers, veterinarians, employees, equipment, a horse van, fencing, feed, utilities, trade literature, transportation to racetracks, transportations to North Carolina for training, advertising, barn repairs, and insurance fees. Expenses were ordinary and necessary expenses for the production of income from the thoroughbred breeding and racing activities and expenses were directly related to income generated from these activities. For the tax years at issue, expenses incurred from thoroughbred breeding and racing activities exceeded the income generated from those activities.

Plaintiffs reported the income, expenses, and losses from these activities on their joint income tax returns, but were nevertheless audited by the Internal Revenue Service ("IRS"). The IRS assessed additional income tax, penalties, and interest against the Purdeys for each of the tax years at issue.[1] Assessments were based upon the IRS's determination that the horse farm was an activity not engaged in for profit. In this regard, the IRS determined that deductions for plaintiffs' losses incurred during the years in suit from their horse breeding and racing activities were limited by application of 26 U.S.C. § 183, which applies to "[a]ctivities not engaged in for profit."[2] Further, the IRS determined that expenses relating to operation of the ranch—to the extent allowable under § 183—were miscellaneous itemized deductions that could not be deducted in determining plaintiffs' Alternative Minimum Tax ("AMT"). In making this determination, the IRS did not contend that the expenses from the horse breeding and racing activities were other than ordinary and necessary, were not properly substantiated, or were disallowed by any other provisions of the Internal Revenue Code.

Plaintiffs allegedly made payments on the amounts assessed against them for all of the tax years in suit. Payments were made on July 16, 1991 for tax years 1984–86, and in April 1992 for tax years 1988 and 1989. Thereafter, on or about April 1993, plaintiffs filed administrative refund claims for por-

1. Following petition in the U.S. Tax Court respecting William Purdey's tax liability for tax years 1982 and 1983, the Tax Court determined, on December 14, 1989, that Purdey was not—for tax years 1982 and 1983—engaged in thoroughbred breeding and racing activities with an actual and honest profit objective, and therefore Purdey's activities fell within the scope of 26 U.S.C. § 183. *Purdey v. Commissioner,* 58 T.C.M. (CCH) 947, 952, 1989 WL 150236 (1989), *aff'd,* 922 F.2d 833 (3d Cir.1990).

2. *See* 26 U.S.C. § 183. References to "Code," "Internal Revenue Code," "IRC §," and " § " in this opinion refer to title 26 of the United States Code.

tions of the deficiency, interest, and penalties assessed against them. Plaintiffs claim that the District Director of Internal Revenue, Newark District, disallowed plaintiffs' claims for refund on August 3, 1994 for tax years 1984–86, and on August 12, 1993 for tax years 1988–89. Plaintiffs filed their complaint for refund in this Court, pursuant to 28 U.S.C. § 1491(a) and 26 U.S.C. § 7422, on August 8, 1995. They seek judgment of $960,650, attorneys' fees, costs, and interest provided by law. Both plaintiffs and the United States have moved for summary judgment.

## DISCUSSION

Assessments by the IRS and tax payments made by the plaintiffs, which payments are now the subject of this tax refund action, were based on the IRS's view that plaintiffs' horse breeding and racing activities during the years in suit were activities that were not engaged in for profit within the meaning of IRC § 183. As such, the IRS took the position that losses plaintiffs incurred during the tax years in suit were subject to the limitations of § 183. Although originally disputed, plaintiffs concede that income from their horse racing and breeding activities during the years in suit are subject to the limitations of IRC § 183.

The IRS, however, also asserted that certain tax preferences, permitted as regular income tax deductions pursuant to IRC § 183(b)(2), were miscellaneous itemized deductions disallowed plaintiffs in computing plaintiffs' AMT. Plaintiffs, to the contrary, posit that deductions otherwise allowed pursuant to IRC § 183(b)(2) are permitted when calculating their AMT because § 183(b)(2) deductions are not miscellaneous itemized deductions disallowed in calculating the AMT, and § 183(b)(2) deductions are independently deductible pursuant to IRC §§ 62(a) and 162(a) as ordinary and necessary business expenses. After considering the parties' arguments and relevant law, the Court holds that, when calculating their AMT, plaintiffs cannot take deductions otherwise permitted pursuant to IRC § 183(b)(2).

### A. Internal Revenue Code § 183

Internal Revenue Code § 183, entitled "Activities not engaged in for profit," is among the sections of the Internal Revenue Code that define expenses deductible from otherwise taxable income. Section 183(a) and (b) limit the availability of deductions from income attributable to activities not engaged in for profit. As plaintiffs and defendant agree, plaintiffs' horse breeding and racing activities during the years in suit were activities not engaged in for profit.

Section 183(a) specifies the general rule and provides in relevant part that "[i]n the case of an activity engaged in by an individual ... if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b) creates certain exceptions to this general rule and provides:

**(b) Deductions Allowable.**—In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

Thus, § 183(a) begins with a blanket presumption disallowing any deductions, otherwise available, attributable to activities not engaged in for profit. Section 183(b), however, excepts two categories of activities not engaged in for profit from the disallowance provision of § 183(a). First, § 183(b)(1) restores those deductions that would otherwise be allowed by other sections of the Code, notwithstanding that deductions are attributable to activities not engaged in for profit. Second, § 183(b)(2) permits further deductions that would be allowable if the activity were engaged in for profit, but only to the extent that gross income from the activity

exceeds deductions otherwise allowed by § 183(b)(1).

The parties do not dispute that § 183 permits plaintiffs certain regular income tax deductions attributable to their horse breeding and racing activities for the tax years in suit. The parties do, however, dispute the availability of § 183(b)(2) deductions when calculating AMT. Thus, the relevant issue in this action is whether plaintiffs are permitted § 183(b)(2) deductions when calculating their AMT.

### B. Alternative Minimum Tax

The Alternative Minimum Tax and its predecessor minimum tax prevent taxpayers from aggregating deductions to the point where the taxpayer pays no, or an extremely low, federal income tax. *See* 26 U.S.C. § 55; *Doyon, Ltd. v. United States,* 37 Fed.Cl. 10, 19 (1996) ("Congress first enacted the minimum tax provisions in 1969 to insure that high-income taxpayers could not studiously avoid significant tax liability by utilizing the various tax preferences typically available to them."); *First Chicago Corp. v. Commissioner,* 842 F.2d 180, 181 (7th Cir.1988) ("The purpose of minimum tax (original or alternative) is to make sure that the aggregating of tax-preference items does not result in the taxpayer's paying a shockingly low percentage of his income as tax.").[3] In this regard, 26 U.S.C. § 55 provides, in relevant part:

**(a) General Rule.**—There is hereby imposed (in addition to any other tax imposed by this subtitle) a tax equal to the excess (if any) of—

**(1)** the tentative minimum tax for the taxable year, over

**(2)** the regular tax for the taxable year.

Thus, the AMT is a tax scheme based on an income tax base entirely separate from that upon which individuals are normally taxed. *Cf. Chugach Alaska Corp. v. United States,* 34 F.3d 1462, 1466 n. 6 (9th Cir.1994) ("The AMT 'is, in effect, a true alternative tax, in the sense that it is computed by applying an alternative rate to an alternative income base and then paying it only if it exceeds the regular tax.'" (*quoting* General Explanation of the Tax Reform Act of 1986, 99th Cong., 437 (1987))); *Doyon, Ltd.,* 37 Fed.Cl. at 18–19 (same).

Section 55(b) further defines the "tentative minimum tax" for individuals, referenced in § 55(a), as 21% of alternative minimum taxable income ("AMTI") in excess of an exemption amount specified in IRC § 55(d). AMTI is defined by IRC § 55(b)(2),[4] and is

---

3. Although its purpose has always remained the same, the AMT has been amended since its enactment in 1969. Pertinent revisions occurred in 1978, 1982, and 1986. *See* Pub.L. No. 99–514, § 701, 100 Stat. 2320 (1986); Pub.L. No. 97–248, § 201, 96 Stat. 411 (1982); Pub.L. No. 95–600, § 421, 92 Stat. 2871 (1978). A pre–1986 version of the AMT—derived from the Internal Revenue Code of 1954 ("1954 Code")—applies to tax years in suit 1984–86, while the 1986 version applies to tax years in suit 1988–89. *See* 26 U.S.C. § 55 note. The Court's opinion generally references the 1986 Internal Revenue Code sections as those sections pertain to the AMT. Section numbers for the AMT prior to 1986 were somewhat different. Additionally, the manner in which the AMT is calculated is somewhat different under the pre–1986 and 1986 versions, although the definition of the AMT in the current IRC § 55(a) has not changed in any way relevant to the Court's determination in this action since 1982. *Compare* 26 U.S.C. § 55(a) *with* Pub.L. No. 97–248, § 201(a), 96 Stat. 411 (1982) (definitions of AMT under the current IRC—which is based on the Internal Revenue Code of 1986, and the 1982 version of IRC—which was based on the 1954 Code). In light of the Court's findings and conclusion, differences in calculating the

AMT, and in AMT section numbers, are not significant. Where relevant, the Court will specify which version of the AMT applies.

4. The AMT version applicable to tax years 1984–86 defined AMTI, in relevant part, as "adjusted gross income ... reduced by the sum of ... the alternative tax net operating loss deduction, plus ... the alternative tax itemized deductions, plus ... any amount included in income under section 667, and ... increased by the amount of items of tax preference." Pub.L. No. 97–248, § 201(b), 96 Stat. 411–12 (1982). The definition of adjusted gross income, as relevant to this action, did not change during the tax years in suit. None of the deductions permitted in calculating the 1982–86 version of the AMT—including the AMTI deductions—included itemized deductions pursuant to § 183(b)(2). *Compare* 26 U.S.C. § 56(b) (1988) *with* Pub.L. No. 97–248, § 201(e)(1) (1982) (demonstrating that limitations on deductions when calculating income to which the AMT applies, as relevant to this action, have not changed since 1982). Thus, AMT calculation for tax years in suit 1984–86, as relevant to the availability of deductions pursuant to § 183, does not differ from calculation of the AMT for tax years 1988–89.

equal to taxable income, adjusted as provided in §§ 56 and 58, and increased as provided in § 57.

### 1. Miscellaneous Itemized Deductions and the AMT

Of the adjustments specified in § 56, § 56(b) limits the itemized deductions available to individuals. Section 56(b) provides in pertinent part that "in determining the amount of alternative minimum taxable income of [an individual] ... [and] in lieu of the treatment applicable for purposes of computing the regular tax ... [n]o deduction shall be allowed ... for any miscellaneous itemized deduction (as defined in section 67(b))." Thus, for purposes of computing AMTI, § 56(b) specifically borrows the definition of miscellaneous itemized deductions in § 67(b) and disallows miscellaneous itemized deductions as defined by § 67(b).[5]

Section 67(b) defines miscellaneous itemized deductions negatively. That is, § 67(b) specifies and lists itemized deductions that *are not* miscellaneous itemized deductions. *See* 26 U.S.C. § 67(b). Deductions permitted pursuant to § 183(b)(2) are not listed in § 67(b). Consequently, deductions solely permitted pursuant to § 183(b)(2) *are* miscellaneous itemized deductions. Expenses attributable to plaintiffs' horse breeding and racing activities subject to § 183(b)(2), and not independently deductible under some other provision of the AMT, therefore, are miscellaneous itemized deductions includible in calculating AMTI subject to the alternative minimum tax.

### 2. Equity, the AMT, and IRC § 183

Nevertheless, plaintiffs argue that the AMT imposes a "gross receipts" tax on plaintiffs' horse breeding and racing activities. In this regard, plaintiffs argue that disallowing plaintiffs' deductions under IRC § 183(b)(2), pursuant to the AMT, imposes upon plaintiffs a tax greater than income from those activities and, therefore, is impermissible under the federal tax system. Plaintiffs, however, misconstrue the AMT, and the tax imposed by the federal income tax.

The AMT does not impose any additional tax upon plaintiffs' income. Rather, it disallows plaintiffs a deduction, otherwise available, if plaintiffs did not qualify for tax treatment pursuant to the AMT. It is true, as plaintiff contends, that plaintiffs' tax liability is greater under the AMT than it would be if the taxpayers had not engaged in their horse breeding and racing activities. This is, however, the purpose of the AMT. It disallows plaintiffs' deductions and results in a tax base greater than would exist if plaintiffs were not subject to the AMT.

If Congress desires to allow taxpayers subject to the AMT to deduct expenses related to their hobbies—activities not engaged in for profit—to the same extent as taxpayers not subject to the AMT, Congress will have to repeal the AMT. "The decision whether to permit particular deductions and in what circumstances lies within the discre-

5.  26 U.S.C. § 67(b) provides:
(b) **Miscellaneous itemized deductions.**—For purposes of this section, the term "miscellaneous itemized deductions" means the itemized deductions *other than*—
(1) the deduction under section 163 (relating to interest),
(2) the deduction under section 164 (relating to taxes),
(3) the deduction under section 165(a) for losses described in subsection (c)(3) or (d) of section 165,
(4) the deduction under section 170 (relating to charitable, etc., contributions and gifts),
(5) the deduction under section 213 (relating to medical, dental, etc., expenses),
(6) the deduction under section 217 (relating to moving expenses),
(7) any deduction allowable for impairment-related work expenses,
(8) the deduction under section 691(c) (relating to deduction for estate tax in case of income in respect of the decedent),
(9) any deduction allowable in connection with personal property used in a short sale,
(10) the deduction under section 1341 (relating to computation of tax where taxpayer *restores substantial amount held under claim of right),
(11) the deduction under section 72(b)(3) (relating to deduction where annuity payments cease before investment recovered),
(12) the deduction under section 171 (relating to deduction for amortizable bond premium), and
(13) the deduction under section 216 (relating to deductions in connection with cooperative housing corporations).
26  U.S.C. § 67(b) (emphasis added).

tion of Congress." *Wallach v. United States,* 800 F.2d 1121, 1124 (Fed.Cir.1986). Until such congressional action, taxpayers subject to the AMT will not be allowed to deduct expenses related to activities not engaged in for profit to a greater extent than is permitted pursuant to the AMT. In short, equity arguments cannot overcome the plain meaning of the AMT provisions. Accordingly, plaintiffs are not entitled to deduct expenses permitted pursuant to IRC § 183(b)(2) in calculating their tax pursuant to the AMT.

### 3. Deductions Pursuant to § 183(b)(2) and § 162(a)

Notwithstanding that deductions permitted pursuant to IRC § 183(b)(2) are disallowed in calculating the AMTI pursuant to IRC §§ 55 and 56(b), plaintiffs claim that their § 183(b)(2) expenses are ordinary and necessary business expenses deductible pursuant to IRC § 162(a)[6] in computing adjusted gross income pursuant to IRC § 62(a).[7] Were this true, plaintiffs would be entitled to deductions for expenses independently established as IRC §§ 62(a) and 162(a) deductions when calculating plaintiffs' AMT because the AMT begins with a tax base of taxable income. *See* 26 U.S.C. § 55(b). Plaintiffs, however, are mistaken, and expenses deductible under § 183(b)(2) are not deductible under §§ 62(a) and 162(a).

With certain exceptions not relevant here, ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, attributable to a trade or business—other than those that consist of the performance of services by the taxpayer as an employee—are deductible from gross income in calculating adjusted gross income. *See* 26 U.S.C. §§ 62(a) and 162(a). In defining trade and business expenses pursuant to § 162, the Supreme Court has noted that, "[a]lthough [§ 162(a) ] ... does not expressly require that a 'trade or business' must be carried on with an intent to profit, this Court has ruled that a taxpayer's activities fall within the scope of § 162 only if an intent to profit has been shown." *Portland Golf Club v. Commissioner,* 497 U.S. 154, 164, 110 S.Ct. 2780, 2787, 111 L.Ed.2d 126 (1990) (citing *Commissioner v. Groetzinger,* 480 U.S. 23, 35, 107 S.Ct. 980, 987, 94 L.Ed.2d 25 (1987) ("[T]o be engaged in a [§ 162] trade or business, ... the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.")).

■ Income and expenses attributable to plaintiffs' horse breeding and racing activities—by plaintiffs' own admission—were not attributable to an activity entered into for profit. Plaintiffs' expenses, therefore, do not qualify for deduction from income pursuant to § 162(a). In fact, income and expenses attributable to plaintiffs' horse breeding and racing activities are subject to § 183 because those horse breeding and racing activities were not entered into for profit. Section 183 applies solely to income and expenses attributable to activities not entered into for profit. Consequently, expenses attributable to activities not entered into for profit—and therefore subject to § 183—can never qualify as deductions allowed pursuant to § 162. The Court holds, therefore, that plaintiffs' expenses attributable to their horse breeding and racing activities subject to IRC § 183(b)(2) are not deductible pursuant to IRC §§ 62(a) and 162(a).

As the parties' briefs and oral arguments make clear, no material facts are in dispute in this action. Rather, the parties disagree as to application of federal tax law. Because plaintiffs are not entitled to deduct their § 183(b)(2) expenses from their horse breeding and racing activities when calculating their AMT in any of the tax years in suit, the Court finds for the defendant.

**6.** 26 U.S.C. § 162(a) provides, in relevant part, that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business."

**7.** 26 U.S.C. § 62 is entitled "Adjusted gross income defined." 26 U.S.C. § 62(a) provides, in pertinent part, that "the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions: **(1) Trade or business deductions.**—The deductions allowed by this chapter ... which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee."

## CONCLUSION

For the reasons stated, defendant's motion for summary judgment is granted, and plaintiffs' motion for summary judgment is denied. The Clerk is directed to dismiss plaintiffs' complaint with prejudice. Costs for the defendant.